Carol M. PALMORE, Secretary, Labor Cabinet (Special Fund), Movant,

v.

Roger Dale HELTON and Bow Valley Coal Resources, Inc., and Workers' Compensation Board, Respondents.

Carol M. PALMORE, Secretary Labor Cabinet (Special Fund), Movant,

v.

James PEVLEY, Jackson Chair, Inc., Employers' Insurance of Wausau and Workers' Compensation Board, Respondents.

Nos. 88–C–722–DG, 88–SC–723–DG.

Supreme Court of Kentucky.

Sept. 28, 1989.

Rehearing Denied Nov. 30, 1989.

David R. Allen, Louisville, for movant, Special Fund.

Otis Doan, Jr., P.S.C., Harlan, for respondent, Roger Dale Helton.

Joshua E. Santana, Lexington, for respondent, Bow Valley Coal Resources, Inc.

Deedra Benthall, Danville, for respondent, James Pevley.

Bennett Clark, Bonnie Hoskins, Stoll, Keenon & Park, Lexington, for respondent, Jackson Chair, Inc.

GANT, Justice.

These two Workers' Compensation cases are virtually identical in their facts and are identical in their holdings. Thus they are combined in this opinion.

## HELTON

Respondent Roger Dale Helton sustained a work-related injury in the course of his employment and filed with the Workers' Compensation Board an Application for Adjustment of Claim, naming his employer and the Special Fund as parties defendant in the application, in which application he alleged total and permanent disability. After several months of negotiation, counsel for the employer contacted the Special Fund, movant herein, to ascertain if it was interested in participating in a lump sum settlement with the employee. The Fund's immediate response was that it was not

interested. Also, during this period, medical proof was taken.

Before the case was decided by the Board, the employer and employee negotiated a settlement, and filed an Agreement as to Compensation and Joint Motion to Approve. This agreement represented a figure based on the employer's responsibility for 57.7% permanent *partial* disability and provided for $110.06 for 425 weeks, commuted to 363.4758 weeks and paid in a lump sum of $40,000. The agreement reserved the rights and privileges for the employee to proceed against the Special Fund, and the agreement was approved by the Board.

One week later, the Board entered an Opinion and Award, finding the employee to be *totally* and permanently disabled. The Board noted the settlement and directed that Helton should recover 5/12 (or 41.67%) from the Special Fund, this amounting to $105.97 per week commencing from the date of the action and for as long thereafter as he is so disabled.

### PEVLEY

As previously indicated, the facts of this case are virtually identical to the Helton case, with only the percentage and age of the employees differing. Respondent Pevley received a work-related injury and entered into a settlement agreement with the employer for 19% permanent *partial* disability, being $27.97 per week for 425 weeks, commuted to a lump sum of $10,-166.42. Again this settlement was reached after the Special Fund was notified by several letters from the attorneys for the employer and employee that a settlement was to be discussed; however, the Special Fund chose to ignore the offer to participate.

After the settlement agreement was executed—the agreement again reserving all rights and privileges to proceed against the Special Fund—it was forwarded to the Board for approval. Pevley then filed an Application for Adjustment of Claim, stating that the Special Fund had denied any liability and further stating that Pevley and the employer had reached a settlement. The Board approved the settlement and, after proof was taken, issued an Opinion and Award, finding that Pevley was *totally* and permanently disabled and requiring the Special Fund to pay 50% of the disability, or $77.67 per week, from the date of the injury and as long thereafter as Pevley is disabled.

The Special Fund makes three basic arguments in this appeal, all of which were rejected by the Court of Appeals. They first argue that the settlement agreement should be held void; second, that if it is not held void it operates to extinguish the liability of the Fund; and, third, that, pursuant to KRS 342.120, the Fund does not incur present liability for payment of income benefits. We cannot agree.

Since 1982, the position of the Special Fund has been that of a co-defendant in those cases in which the employee is entitled to compensation or disability resulting from a dormant disease or condition aroused into disabling reality by the subsequent injury or occupational disease.[1] Prior to 1982, the action might have been deemed derivative, as payments were made by the employer or its insured, and that portion allotted to the Special Fund was paid to the employer. However, KRS 342.-120(5) was amended in 1982 and now provides that payment shall be made by the Fund directly to the employee. Thus, the Fund may enter the case at its inception as a co-defendant and remain in this position throughout the proceedings.

■ Workers' Compensation cases are entirely statutory, but it is certainly not inconsistent with the general law to permit a plaintiff to settle with one defendant and maintain his action against the co-defendant. Additionally, KRS 342.265 clearly permits the employer and employee to enter into a settlement agreement, subject to approval by the Board (now the Administrative Law Judge), which agreement be-

---

**1.** The exception to this is those cases encompassed in KRS 342.316 (the pneumoconiosis section).

**198**

comes an award upon approval. This settlement may be made prior to the hearing and award made by the Board, or even application filed under the provisions of the Act. This action being no longer derivative, settlement with one co-defendant, under the terms and conditions found herein, does not extinguish the claim against the other co-defendant—in this case the Special Fund.

■ Also, the lump sum settlement found in each of these cases does not offend the provisions of KRS 342.150, which requires application for settlement to be made by *all* parties. As correctly stated by the Court of Appeals, KRS 342.150 applies to post-award settlements and not settlements made prior to the award, as in the instant cases.

■ The argument of the Fund that its payments are not due until the expiration of the compensable weeks is without merit. Nothing in KRS Chapter 342 denies to the employer a right to make a lump sum settlement prior to hearing and award. When read together, KRS 342.120(4) and (5) provide that the employer shall pay first until all the benefits are paid. The remaining compensation is then paid out of the Special Fund.

In the instant cases, the employer has paid in full, setting into instant motion the obligation of the Fund. Nothing remains to be done by the employer.

Two policy determinations present themselves in these cases. First, if pre-hearing settlements are approved and commuted to a lump sum, the Special Fund has an immediate obligation to commence its payments to the employee, denying to the Fund the previously enjoyed privilege of permitting its money to remain at interest until the expiration of the weekly periods encompassed in the employer's liability. On the other side of the coin is KRS 342.265, which clearly permits a settlement agreement between employer and employee. This, of course, is a necessary tool designed to prevent trial on every case, since a trial on *every* case would greatly increase the case load, cost and expenses.

The opinion of the Court of Appeals is affirmed.

STEPHENS, C.J., and COMBS, LAMBERT, LEIBSON and WINTERSHEIMER, JJ., concur.

LEIBSON, J., files a concurring opinion in which LAMBERT, J., joins.

VANCE, J., dissents by separate dissenting opinion.

LEIBSON, Justice, concurring.

I concur in the reasoning and conclusion reached by the Majority Opinion but would extend the Opinion one step further. I agree that employer/employee lump sum settlements are not statutorily precluded and that this settlement immediately obligates the Special Fund "to commence its payments to the employee." But I would add the following:

The Special Fund's statutory liability for weekly payments cannot be increased. Therefore, it's obligation is limited in duration of future payments to the appropriate number of weeks as specified under the life expectancy table. The Special Fund is not obligated to an open-ended award payable from the accelerated inception date until death. Since, under the latest statute the employer's liability on a percentage of total permanent disability as split with Special Fund is now fixed to a number of weeks by the actuarial table, it follows that the Special Fund's liability should be similarly limited when the Special Fund's payment date is moved up or accelerated by an employer/employee lump sum settlement of the employer's share.

LAMBERT, J., joins this concurring opinion.

VANCE, Justice, dissenting.

I respectfully dissent. As the majority opinion notes, workers compensation proceedings are entirely statutory. K.R.S. 342.150 permits a lump sum settlement whenever compensation has been paid for not less than six months, but only on the application of *all* parties and with approval of the Board. No statute permits a lump

sum settlement where payments have been made for less than six months or where the application has not been joined by all the parties.

In this case no payments whatsoever had been made pursuant to an award, and the Special Fund, which was a party to the proceeding, did not join in the application.

Proceedings which are entirely statutory must comply strictly with the statutes which authorize the proceedings.

The factual situation here does not come within the statutory authorization for lump sum settlements of workers compensation claims. In addition, a lump sum settlement of this type tends to frustrate the plan devised by the General Assembly for the financing of the Special Fund.

Because I do not believe the lump sum settlement in this case was authorized by statute, I would hold it to be void and direct that compensation be paid as if no attempted settlement had been made.