Vicki G. NEWBERG, Acting Director
of Special Fund, Appellant,

v.

Aze (Ace) DAVIS; Kay & Kay Construc-
tion; Ronald W. May, Administrative
Law Judge; and Workers' Compensa-
tion Board, Appellees.

KAY & KAY CONSTRUCTION,
Appellant,

v.

Aze (Ace) DAVIS; Vicki G. Newberg, Act-
ing Director of Special Fund; Ronald
W. May, Administrative Law Judge;
and Workers' Compensation Board, Ap-
pellees.

Nos. 91–SC–582–WC, 91–SC–618–WC.

Supreme Court of Kentucky.

Oct. 22, 1992.

As Modified Nov. 13, 1992.

Case Ordered Published by
Supreme Court Nov. 13, 1992.

Mark C. Webster, Labor Cabinet–Special Fund, Louisville, for Vicki G. Newberg, Acting Director of the Special Fund.

Bennett Clark, Stoll, Keenon & Park, Lexington, for Kay & Kay Const.

Dennis L. Nagle, Cole, Cole & Anderson, P.S.C., Barbourville, for appellee Davis.

## OPINION OF THE COURT

Aze Davis, a laborer, sustained a work-related injury to his back in November, 1977, while employed by Whitley Development Co. (Whitley). The claim was settled for a lump-sum payment of $7,000, which represented a 4.6% permanent, partial occupational disability. This award was apportioned 50% to Whitley and 50% to the Special Fund. The settlement agreement was approved by the "old" Workers' Compensation Board.

After his Social Security benefits expired, Davis returned to work. On December 23, 1987, while employed by Kay & Kay Construction (Kay), he sustained another work-related back injury. Kay's motion to consolidate the 1977 claim with the present claim for informational purposes was granted. There was no motion to reopen the claim for the 1977 injury, and there was no attempt to bring the 1977 employer into the instant action.

At the hearing, the Administrative Law Judge (ALJ) ruled that Davis was presently 60% occupationally disabled. He attributed 20% to a prior active condition and apportioned the remaining 40% equally between Kay and the Special Fund. The ALJ explained that Dr. Patrick had assessed a 15% functional impairment and, in view of Davis's prior injury and problems with spondylolisthesis, Dr. Patrick had believed that 5% (⅓ of the total) was active before the 1987 injury. The ALJ, therefore, determined that ⅓ of claimant's occupational disability was active at the time of the injury.

In his petition for reconsideration, Davis urged unsuccessfully that the ALJ reconsider the case in the light of *Parson v. Union Underwear*, Ky.App., 758 S.W.2d 43 (1988), discretionary review denied October 18, 1988. On appeal to the "new" Workers' Compensation Board (Board), claimant argued that the Special Fund was bound by the percentage in the prior settlement, pursuant to *Parson, supra*. Therefore, the Special Fund was liable for the balance of the preexisting disability assessed by the ALJ, pursuant to *Young v. Fulkerson*, Ky., 463 S.W.2d 118 (1971) and KRS 342.-120. He did not appeal as to Kay. During the pendency of the case this Court ruled in *Beale v. Stratton*, Ky., 779 S.W.2d 201 (1989), that the Special Fund is not required to pay an injured employee for preexisting active disability. The Board determined, however, that the doctrine of *res judicata*, as applied in *Parson, supra*, should be applied, because the record and the ALJ's findings did not establish that Davis's condition had changed between the prior award and the subsequent injury. The Board noted that the Special Fund was a party to the settlement and was, therefore, bound by its terms. The Board then found that privity existed between Whitley and Kay, by virtue of the requirement that employers pay workers' compensation benefits. The case was reversed and remanded by the Board, with directions that prior active disability be assessed at 4.6%, and that liability be apportioned equally between Kay and the Special Fund.

The Court of Appeals affirmed, noting that the issue did not actually involve *res judicata* but whether a different employer

and the Special Fund were bound by the percentage of occupational disability contained in a prior settlement where there was no proof that the extent of the worker's disability had increased between the settlement and the subsequent injury. The court, nonetheless, cited *Parson, supra,* as prohibiting the "relitigation" of the prior claim.

In *Beale v. Faultless Hardware,* Ky., 837 S.W.2d 893 (1992), this Court discussed the application of *res judicata* and collateral estoppel to facts contained in an agreement to settle a prior claim. We overruled *Parson, supra,* to the extent that it would, in the litigation of a claim for a subsequent injury, preclude litigation of facts contained in the agreement to settle the prior claim.

The disability figure contained in a settlement agreement is a negotiated figure and may or may not equal the claimant's actual occupational disability. Under KRS 342.125, a claimant is required to show that a change in his physical condition since the date of the settlement has produced an increase in his occupational disability during that period in order to reopen the award. The relevant change in occupational disability, therefore, is the difference between claimant's actual occupational disability on the date of the settlement, regardless of the figure for which he settled, and his occupational disability at the time of reopening.

In the case of a subsequent injury, the test for determining whether a claimant suffers from an active disability is how much, if any, occupational disability he evidenced immediately before the subsequent injury. The fact that the claimant was employed when he received the subsequent injury does not preclude a finding of active disability. *Wells v. Bunch,* Ky., 692 S.W.2d 806 (1985). In a claim for a subsequent injury, the relevant change, therefore, occurs during the period which begins immediately preceding the injury and ends at the point at which the worker reaches maximum medical improvement after the injury. Any change in the worker's actual occupational disability which may have oc-

curred between the settlement and the second injury, and is attributable to the injury which was the subject of the settlement, properly is the subject of a motion to reopen that claim.

In the instant case, the Court of Appeals' opinion turned on the fact that there was no evidence that the claimant's condition had worsened since the settlement of the 1977 injury. We note that such lack of evidence precluded a reopening of the 1977 claim. Because there was no evidence in the record regarding claimant's actual occupational disability at the time of the settlement, the fact that there was no evidence of a change in that condition did not bear on the ALJ's finding regarding any preexisting active disability in this case. There was evidence that immediately before the subsequent injury claimant's functional impairment was 5% and that his functional impairment after the injury was 15%. The translation of functional impairment to occupational disability is among the functions of the fact finder.

Here, the ALJ found that claimant had sustained a 60% occupational disability and that 20% of that disability preexisted the subsequent injury. This finding was supported by substantial evidence and may not be disturbed on appeal. Accordingly, the decision of the Court of Appeals is hereby reversed, and the award made by the ALJ in this case is hereby reinstated.

All concur.