Vicki G. NEWBERG, Acting Director of Special Fund, Appellant,

v.

Jerry W. WEAVER; Energy Producers Associates; Richard H. Campbell, Administrative Law Judge; and Workers' Compensation Board, Appellees.

No. 93–SC–17–WC.

Supreme Court of Kentucky.

Sept. 30, 1993.

As Modified on Denial of Rehearing Dec. 22, 1993.

Mark C. Webster, Labor Cabinet, Sp. Fund, Louisville, for appellant Newberg.

Sidney B. Douglass, Harlan, for appellee Weaver.

Thomas L. Ferreri, Joel W. Aubrey, Lexington, for appellee Energy Producers Associates.

## OPINION OF THE COURT

This workers' compensation case concerns whether the Special Fund's payment period for an award of income benefits may be accelerated when the worker and his employer enter into a pre-award settlement agreement providing for periodic payments over the worker's lifetime rather than for a lump-sum payment.

Claimant and his employer, Energy Producers Associates, entered into a pre-award settlement agreement which provided for 17.-41% of a permanent, total, occupational disability benefit to be paid by the employer in periodic payments over claimant's lifetime or for a minimum of ten years. The Administrative Law Judge (ALJ) approved the agreement, and an order to that effect was entered on January 3, 1991. The Special Fund was not a party to the agreement, and the issue of its liability proceeded to a hearing, after which the ALJ determined that claimant was 100% occupationally disabled. Liability was apportioned 20% to the employer and 80% to the Special Fund. The ALJ also ordered that the Special Fund's obligation to pay the award should begin on May 29, 1989, the day after the last payment of temporary, total, disability benefits. The Special Fund's petition for reconsideration, which alleged that the ALJ erred in accelerating the date on which it should begin payment, was overruled.

On appeal to the Workers' Compensation Board (Board) the Special Fund argued that the ALJ erred in ordering its payments to begin immediately following the period of temporary, total, disability rather than after 20% of claimant's life expectancy had passed. In support of this argument, the Special Fund cited KRS 342.120(4) and (5) [now KRS 342.120(6) and (7) ] and *Palmore v. Helton*, Ky., 779 S.W.2d 196 (1989). The Board believed, however, that the difference between a pre-award lump-sum settlement, as was present in *Palmore v. Helton, supra*, and a periodic settlement over the worker's lifetime, as was present in the instant case, was immaterial to the result. The Board concluded that either type of agreement accelerated the liability of the Special Fund to the date the ALJ approved the settlement. Accordingly, the case was remanded to the ALJ with directions to begin Special Fund liability as of January 3, 1991, the date of the settlement between claimant and his employer. Pursuant to the Board's directions, payment should be made for the number of weeks equalling 80% of claimant's life expectancy. That decision was affirmed by the Court of Appeals.

It is well established that the Workers' Compensation Act is social legislation which encompasses a number of public policy considerations. Foremost of these is the policy of compensating disabled workers for the decrease in their wage earning capacity which has resulted from an injury caused by work. See KRS 342.0011(11). Under the Act, a worker who sustains a permanent, occupational disability is awarded a benefit which is paid periodically in order to provide a continuing source of income in an amount sufficient to enable the worker and his dependents to meet their ongoing and essential requirements for food, clothing, and shelter. Second, with the goal of promoting the prompt disposition of compensation claims and of controlling the expense of prosecuting a claim, both the legislature and the courts have adopted a policy encouraging the settlement of these claims. KRS 342.265; *Beale v. Faultless Hardware*, Ky., 837 S.W.2d 893 (1992).

The third policy consideration involves the Special Fund. The purpose of a subsequent injury fund is to encourage employers to hire workers who are disabled or who may become disabled due to the work-

related arousal of an underlying physical condition. *Stovall v. Dal–Camp, Inc.*, Ky., 669 S.W.2d 531, 533 (1984); *Transport Motor Express v. Finn*, Ky., 574 S.W.2d 277, 280–81 (1978). This is accomplished by holding the Special Fund responsible for compensating a worker for that portion of his occupational disability which is attributable to the arousal of a previously dormant condition or which is attributable to the excess disability which results because the latest disability is superimposed on a previous disability. Presently, the Special Fund is financed by assessments on workers' compensation insurance premiums and self-insurance contributions. Historically, the cost of the Special Fund's liability ultimately has been spread among all of the employers in the state who participate in the workers' compensation system.

■ Before 1982, the employer paid the entire award to the worker, and the Special Fund reimbursed the employer quarterly for its apportioned share of each periodic payment. However, since the effective date of the 1982 amendments to KRS 342.120, the employer has paid the entire benefit for enough weeks to satisfy its share of the award, after which the Special Fund pays its share. This change in the payment scheme indicated an attempt by the legislature to improve the financial status of the Special Fund. It allowed the Fund to delay paying its share of the award for a longer period of time. By shifting the entire obligation to pay for the initial weeks of the award to the employer in whose employ the injury occurred, the legislature effectively decreased the amount of assessments necessary to finance the obligations of the Special Fund, which ultimately were paid by all employers who participated in the workers' compensation system.[1]

In *Palmore v. Helton, supra*, this Court ruled that, pursuant to the 1982 amendments to KRS 342.120, the employer and the Special Fund were in the position of codefendants in workers' compensation cases. Therefore, a worker could settle with one defendant and maintain a cause of action against the other. If a worker reached a pre-award lump-sum settlement with an employer, the employer's liability was discharged upon payment of the lump sum, and the liability of the Special Fund became due. It was the worker's receipt of the lump sum that caused the Special Fund's financial obligation to come due. *Palmore v. Helton, supra* at 198.

Subsequently, in *Newberg v. Chumley*, Ky., 824 S.W.2d 413 (1992), we ruled that neither *Palmore v. Helton, supra*, nor KRS 342.120 entitled a worker who reached a pre-award lump-sum settlement with his employer to receive during his life expectancy an amount of benefits from the Special Fund greater than he otherwise would have received. When payment of the Special Fund's share of the award was complete, payment would be suspended until such time as the worker lived beyond his anticipated life expectancy. We also noted that KRS 342.120 controls the distribution of benefits during the worker's life expectancy. It does not address the procedure to be followed where the worker lives beyond his anticipated life expectancy. Because the worker and the employer in that case had reached a settlement and its terms had been fulfilled, the employer's obligation was complete. However, if the worker lived beyond his life expectancy the Special Fund would, at that time, resume payment for its percentage of a total disability award for so long as the worker lived.

Although the settlement of workers' compensation claims is highly desirable and is to be encouraged as a matter of policy, we believe that settlements which are reached also must comply with the other public policy considerations embodied in the Workers' Compensation Act. Accordingly, an ALJ is without authority to approve settlement agreements which do not comply with those policy considerations.

---

1. This claim arose prior to the effective date of the 1987 Amendments to the Workers' Compensation Act. We note, however, that those amendments retained the payment scheme enacted in 1982. They also created the Kentucky Workers' Compensation Funding Commission to hold and invest Special Fund assessments, also consistent with the goal of minimizing the amount of assessments necessary to meet the liabilities of the Special Fund. KRS 342.1223.

In *Palmore v. Helton, supra,* there was a lump-sum settlement, the payment of which caused the Special Fund's liability to come due. In the instant case, instead of a lump-sum payoff, the contract provided that the employer's payment period was to extend throughout the worker's life. Therefore, the date for discharge of the employer's obligation was postponed until the end of the worker's life. This is contrary to the policy behind periodic payments in two respects. First, even though the agreement presupposed that the worker was totally, occupationally disabled, it would result in the worker receiving periodic payments during the employer's payment period in an amount equal only to 17.41% of a total, occupational disability benefit, an amount insufficient to meet the worker's essential needs. Second, because the employer will not have paid its entire liability until the end of the worker's life, the Special Fund's obligation would not come due until that time pursuant to the plain language of KRS 342.120. Furthermore, it is contrary to the public policy embodied in the 1982 amendments to KRS 342.-120 to accelerate the date upon which the Special Fund's liability becomes due and to allow the employer to extend its payment period throughout the worker's life, as is urged by the employer. The legislature placed the obligation for payment of the initial weeks of the award on the employer in whose employ the injury occurred in order to minimize the increase in Special Fund assessments that otherwise would be necessary to meet the obligations of the Special Fund and which ultimately are borne by all employers. We conclude, therefore, that the agreement reached by the employer and the worker in this case is void, insofar as it would extend the period for payment of the employer's obligation on the award throughout the worker's life, because it is contrary to public policy. Voiding this portion of the agreement has no effect on the remainder of the agreement.

We reiterate our continuing view that agreements to settle workers' compensation claims are to be encouraged. Unless an agreement is contrary to the Act or to public policy, its approval by an ALJ is authorized. Lump-sum agreements are contemplated by the Act, and workers are, of course, always free to invest the proceeds of a lump-sum agreement or to purchase an annuity that will provide for periodic payments. See KRS 342.150; KRS 342.155. Workers and their employers also are free to reach an agreement which contemplates periodic payments for an agreed-upon percentage of occupational disability. We believe, however, that in order to comply with the public policy considerations embodied in the Workers' Compensation Act, periodic payments may not extend beyond the percent of the worker's life expectancy represented by the percent of disability to which the parties have agreed. In the instant case, the agreement was premised on 17.41% of a total disability benefit; therefore, public policy would require that the agreement provide for a total disability benefit payable over no more than 17.41% of the worker's life expectancy. After the employer's obligation was paid in full, the obligation of the Special Fund would come due.

Energy Producers Associates' motion to be dismissed as a party is hereby denied. The decision of the Court of Appeals is hereby reversed, and the case is remanded to the ALJ for proceedings consistent with this opinion.

All concur except WINTERSHEIMER, J., who concurs in result only.