Robert E. **SPURLIN**, Director of Special Fund, Successor to William O. Windchy, **Appellant**,

v.

Joe **WOODS**; Richard H. Campbell, Jr., Administrative Law Judge; and Workers' Compensation Board, **Appellees**.

No. 96–SC–549–WC.

Supreme Court of Kentucky.

Feb. 27, 1997.

As Modified Oct. 30, 1997.

Judith K. Bartholomew, Louisville, for Appellant Spurlin.

David R. Marshall, Lexington, for Appellee Woods.

## OPINION OF THE COURT

The parties stipulated that claimant sustained a work-related injury which became manifest on June 19, 1991. Claimant and the employer reached a pre-award agreement under the terms of which the parties agreed to a weekly benefit rate of $185.30 for a compromised life expectancy of 631.48 weeks, reduced to present value. The agreement indicated that claimant would be paid a lump sum of $58,708.08, followed by periodic payments of $1,067.00 per month, for a period of sixty months, with payment commencing one month after the date the agreement was approved. In the event claimant died before expiration of the sixty months, any remaining periodic payments were to be paid to his widow. In the event both he and his wife died before payment was complete, the balance was to be paid to his estate. The agreement was approved on February 8, 1994, and litigation of the Special Fund's liability proceeded to a decision.

In an award entered on October 24, 1994, the Administrative Law Judge (ALJ) determined that claimant was totally, occupationally disabled and apportioned 77.8% of the award against the Special Fund. Applying KRS 342.120(8)(b), which became effective on April 4, 1994, the ALJ ordered payment to commence on February 8, 1994, and to continue for so long as claimant remained disabled.

The Special Fund filed a petition for reconsideration, arguing that its liability should not commence until February, 1999, the date upon which the periodic payments would cease and the employer's liability would be extinguished. *Newberg v. Weaver*, Ky., 866 S.W.2d 435 (1993). The petition was sustained, and claimant appealed to the Workers Compensation Board (Board).

The Board observed that the periodic payments contemplated by this settlement were "more in the nature of an annuity payment than a compensation benefit." The Board also noted that shortly after the decision in *Weaver*, the legislature had amended KRS 342.120 in an attempt to improve the financial status of the Special Fund. KRS 342.120(8)(b) provided that when a worker and employer agree to settle the employer's

liability and a determination has been made as to the Special Fund's liability, the Special Fund's portion of the benefit is to be paid over the maximum period provided for by statute for that disability. The Board concurred with the ALJ's decision to apply KRS 342.120(8)(b) to this claim since the provision was remedial. However, the Board concluded that since the maximum period for total disability began on the date of claimant's injury, the Special Fund should pay its weekly benefit beginning on that date and continue paying for the balance of his life. Therefore, the decision of the ALJ was reversed, and the claim was remanded for further proceedings.

The Special Fund appealed to the Court of Appeals, asserting that an agreement which employs a structured settlement does not extinguish the employer's liability until the final payment contemplated by the agreement is made. However, the Court of Appeals disagreed, noting that KRS 342.120(8)(b) made no distinction between a settlement which provided for payment of a lump sum and one which provided for periodic payment. Therefore, the decision of the Board was affirmed.

The Special Fund appeals to this Court, arguing that the Board and Court of Appeals misconstrued KRS 342.120(8)(b) in a manner which is inconsistent with the remainder of Section 120 and with the express purpose of House Bill 928, of which the provision was a part. The Special Fund explains that KRS 342.120(6) and (7) [formerly KRS 342.120(4) and (5) ] were enacted in 1982 and were not amended in 1994. They provide that the employer is to pay its entire liability on a workers' compensation award before the liability of the Special Fund comes due. As explained by the Court in *Weaver*, the purpose of the legislature in requiring the employer to pay the initial weeks of a workers' compensation award was to minimize the increase in assessments necessary to meet the obligations of the Special Fund. *Id.* at 438. Furthermore, consistent with the purpose of the 1982 amendments, one of the express purposes of House Bill 928 was to gain control over the projected unfunded liability of the Special Fund. Construing KRS

342.120(8)(b) in a manner which requires the Special Fund to commence payments as of the date of injury rather than the date the employer extinguishes its liability, is contrary to that purpose and increases the cost to the Special Fund by making it liable for substantial past due benefits. Furthermore, in certain instances, the combination of the employer's periodic payment and the accelerated Special Fund payment would exceed the maximum statutory benefit, a result which is contrary to public policy. *See Matney v. Newberg,* Ky., 849 S.W.2d 526 (1993). Finally, the Special Fund asserts that since its liability is no longer derivative, a settlement between the worker and employer should not affect the extent of its liability and should not penalize the Special Fund for its inability or unwillingness to enter into an agreement.

Claimant urges the Court to require Special Fund payment over the maximum statutory period, in other words, from the date of injury. Furthermore, taking issue with the Special Fund's reliance on *Weaver*, he argues that this case does not involve an ordinary periodic settlement. Here, the employer paid a lump sum, followed by monthly payments in the nature of a guaranteed five-year annuity to claimant, to his surviving wife if he died before the expiration of five years, or to the estate if neither survived for the five-year period. Therefore, he argues that Special Fund payment should not be delayed until all periodic payments have been made.

As amended pursuant to House Bill 928, effective April 4, 1994, KRS 342.120(8)(b) provided:

(b) In instances where the employer has settled its liability for income benefits and thereafter a determination has been made of the special fund's liability, the special fund portion of the benefit rate shall be paid over the maximum period provided for by statute for that disability, unless otherwise agreed by all parties.

On December 12, 1996, while this appeal was pending, the legislature enacted House Bill 1, which contained an emergency declaration and which became effective immediately. Section 3 of House Bill 1 again amended KRS 342.120, omitting subsections

(2) through (8)(a), and providing, in pertinent part, as follows:

> (3) Where the employer has settled its liability for income benefits and thereafter a determination has been made of the special fund's liability, the special fund portion of the benefit rate shall be paid over the maximum period provided for by statute for that disability, with the period of payment beginning on the date settlement was approved by an administrative law judge or arbitrator. This provision is remedial and shall apply to all pending and future claims.

In *Spurlin v. Duty* (96–SC–288–WC) and *Duty v. Double Eagle* (96–SC–312–WC), 939 S.W.2d 874, also rendered today, we reaffirmed the decision in *Miracle v. Riggs*, Ky. App., 918 S.W.2d 745 (1996), that KRS 342.120(8)(b) was remedial legislation which applied to all claims pending on its effective date. We construed KRS 342.120(8)(b) as not affecting the rule that where the employer's liability is reduced to a lump sum pursuant to a pre-award settlement, the Special Fund commences payment of its share of the award from the date upon which the employer's liability is extinguished. We also determined that the 1996 amendment to KRS 342.120, which expressly provides for the Special Fund to begin payment upon approval of a settlement between the worker and employer and to pay its apportioned share of the award over the maximum statutory period for the disability, constitutes a clarification of the intent of the 1994 amendment rather than a change in policy. Furthermore, we noted the 1996 amendment's express indication that it is remedial and that it applies to all claims pending on its effective date.

The Special Fund relies upon *Weaver* in asserting that its liability in the instant case should not come due until the employer has made the last periodic payment contemplated by the settlement. However, *Weaver* did not involve a structured settlement with a guaranteed payout but an ordinary settlement which provided for lifetime periodic payment in an amount equivalent to an award for an agreed-upon percentage of occupational disability. Furthermore, *Weaver* was decided before the effective date of either the 1994 or 1996 amendment to KRS 342.120. Therefore, we may assume that the legislature was aware of that decision when drafting the amendments. As noted by the Court of Appeals, KRS 342.120(8)(b) did not distinguish between settlements involving lump-sum and periodic payments. Furthermore, although the 1996 amendment to KRS 342.265 places certain restrictions on the instances in which lump-sum settlements may be approved, an indication that the legislature considered the implications of different types of settlements, the 1996 amendment to KRS 342.120, like the 1994 amendment, does not distinguish between a lump-sum settlement and a structured settlement which provides for a guaranteed payout, part of which is in the form of periodic payments. Therefore, we conclude that the Special Fund was required to commence paying its share of the award on the date the settlement was approved.

The decision of the Court of Appeals is hereby affirmed, in part, and reversed, in part, and the case is remanded to the ALJ for further proceedings that are consistent with this opinion.

All concur.