**Robert L. WHITTAKER, Director of Special Fund, Appellant,**

v.

**Willard POLLARD; Kem Coal Company; Donna H. Terry, Administrative Law Judge; and Workers' Compensation Board, Appellees.**

No. 1999–SC–0896–WC.

Supreme Court of Kentucky.

Aug. 24, 2000.

Joel D. Zakem, Frankfort, for Appellant.

James D. Holliday, Hazard, for Appellee Pollard.

Paul E. Jones, Baird & Baird, Jeffrey D. Damron, Baird, Baird, Baird, & Jones, P.S.C., Pikeville, for Appellee Kem Coal Co.

## OPINION OF THE COURT

This workers' compensation appeal results from a motion to reopen a claim for coal workers' pneumoconiosis which had been settled with the employer and litigated against the Special Fund. It concerns whether the claimant was required to seek benefits at reopening from the employer as well as from the Special Fund.

Claimant sought workers' compensation benefits upon allegations of coal workers' pneumoconiosis and a work-related hearing loss. The claims were consolidated. With regard to the pneumoconiosis claim which is presently at issue, the parties stipulated that claimant had sustained 26 years of exposure in multiple employments. His date of last exposure was October 23, 1994. Drs. Myers, Anderson, and Chaney testified that claimant suffered from various degrees of category 2 disease; whereas, Drs. Powell, Wright, and Lane diagnosed category 1 disease. Spirometry performed at the time yielded FVC results which ranged from 83% to 86% of the predicted normal and FEV1

results which ranged from 81% to 87% of the predicted normal.

After the prehearing conference but prior to the filing of briefs, claimant and the employer reached an agreement concerning the employer's potential liability. The agreement indicated that claimant's average weekly wage was $700.70. It provided for a lump sum payment in the amount of $50,000.00 "in settlement of potential total disability with multiple exposure." Furthermore, it reserved claimant's right to proceed separately against the Special Fund. The agreement was approved by an Administrative Law Judge (ALJ).

The claim against the Special Fund proceeded to a decision wherein the ALJ determined that claimant suffered from category 1 disease without a respiratory impairment. Noting that this would entitle claimant to a retraining incentive benefit (RIB) and that the Special Fund bore no liability for a RIB, the claim was dismissed. After concluding that claimant had not sustained an appreciable hearing loss, the ALJ also dismissed that portion of the claim.

On October 23, 1997, claimant filed a motion to reopen the pneumoconiosis claim, naming both the employer and the Special Fund as parties-defendant and serving both with a copy of the pleading. The body of the motion indicated that because claimant and the employer had reached a settlement for a potential total disability, reopening was sought only against the Special Fund. Attached to the motion was claimant's affidavit which indicated that the disease had progressed and that he had developed a respiratory impairment. KRS 342.125(2)(a). Also attached to the motion was a report by Dr. Westerfield which interpreted a chest x-ray as revealing the presence of category 2/1 disease. Dr. Westerfield reported spirometric values which were lower than those introduced in the initial claim but which were, nonetheless, within the normal range.

Claimant's argument was that because he had demonstrated a progression to category 2 disease, he was required to demonstrate only a decline in spirometric test results rather than the development of a compensable respiratory impairment. An alternative argument was that if he were required to demonstrate both an increase in disease category and the development of a compensable respiratory impairment in order to reopen the award, the April 4, 1994, version of KRS 342.125(2)(a) was unconstitutional.

After both an arbitrator and an ALJ overruled the motion because claimant had failed to establish the development of a compensable respiratory impairment, claimant appealed. The Workers' Compensation Board (Board) reversed the decision, relying upon *Campbell v. Universal Mines*, Ky., 963 S.W.2d 623 (1998), and noting that claimant had offered the required prima facie evidence in support of his motion to reopen. The Board rejected the notion that claimant was required to proceed at reopening against the employer as well as against the Special Fund, indicating that the agreement evinced an intent to settle a total occupational disability which could not be reopened. The Board also rejected the argument that the Special Fund's payment period should not begin until 25% of claimant's life expectancy had passed.[1] The Court of Appeals affirmed the Board, and this appeal followed.

The Special Fund no longer disputes whether claimant has presented an adequate prima facie case to support granting the motion to reopen claimant's RIB award. However, it continues to assert that the agreement refers only to a "potential total disability" and that there is nothing in the plain language of the agreement which bars a future reopening against the employer. It relies upon *New-*

1. At the time of the initial claim, the parties had stipulated that the employer's share of any award of income benefits would be 25% and the Special Fund's share would be 75%.

*berg v. Davis,* Ky., 841 S.W.2d 164 (1992), for the proposition that the language contained in a settlement agreement is not binding at reopening. From that premise, it argues that because the ALJ determined that claimant was not totally disabled in the initial proceeding and because that finding was not appealed, the agreement does not preclude a reopening against the employer. The Special Fund concludes that the employer is a necessary party to the reopening proceeding, that the employer is responsible for the initial 25% of any benefits awarded at reopening, and that the settlement between claimant and the employer does not accelerate the period within which the Special Fund must begin to pay its share of any benefits awarded at reopening.

■ We begin by noting that there is a strong public policy favoring the settlement of workers' compensation claims. *See Newberg v. Weaver,* Ky., 866 S.W.2d 435 (1993); *Newberg v. Sarcione,* Ky., 865 S.W.2d 317 (1993). In *Palmore v. Helton,* Ky., 779 S.W.2d 196 (1989), we determined that, since 1982, the employer and the Special Fund have been in the position of codefendants, each of whom is directly liable to the claimant. We concluded, therefore, that a worker may reach a pre-award settlement with either defendant and maintain an action against the other. We also determined that where a worker and an employer have reached a pre-award agreement to settle a claim and the employer's liability has been extinguished by the payment of a lump sum, the Special Fund's payment period is accelerated by operation of KRS 342.120. 779 S.W.2d at 197–98.

■ An agreement to settle a workers' compensation claim constitutes a contract between the parties. Once approved, an agreement to settle a claim becomes an award. *Stearns Coal & Lumber Co. v. Whalen,* 266 Ky. 227, 98 S.W.2d 499 (1936).

Unless precluded by the terms of the underlying agreement, a settled award may be reopened pursuant to KRS 342.125.

The Special Fund relies upon *Newberg v. Davis, supra,* as supporting its assertion that no statement of disability contained in a settlement agreement is binding at reopening. In *Davis,* the terms of a settlement between the worker, employer, and Special Fund indicated that the lump-sum payment represented a 4.6% occupational disability. Following a subsequent injury in a different employment, the claim was consolidated with the subsequent injury claim for informational purposes only. Based upon the medical evidence, the ALJ determined that the worker retained a 60% occupational disability after he reached maximum medical improvement and that immediately before the subsequent injury his occupational disability was 20%. Therefore, a 20% disability was classified as prior, active disability and was excluded from the award. There was no evidence of a worsening of the first injury after the settlement; therefore, the question on appeal was whether the 4.6% figure which was contained in the settlement agreement precluded the finding of a 20% prior, active disability at reopening. In rejecting that proposition, we noted that the 4.6% figure was the product of a compromise and that it might or might not have equaled the worker's actual disability at the time.[2] We concluded that the finding of a 20% prior, active disability was supported by substantial evidence and could not be disturbed on appeal.

*Davis* and our previous decision in *Beale v. Faultless Hardware,* Ky., 837 S.W.2d 893 (1992), stand for the principle that a fact contained in an agreement to settle a workers' compensation claim is not binding in the litigation of a claim for a subsequent injury. In *Davis* we also indicated that had there been an increase in occupational disability due to the initial injury, a re-

---

**2.** We noted that had the difference between the 4.6% figure and the ALJ's finding of a 20% prior, active disability been attributable to a worsening of the first injury, a reopening of the claim for that injury would have been the proper remedy.

opening of the settled award would have been appropriate. In such an instance, KRS 342.125 provides that no fact contained in the agreement constitutes an admission against interest. In *Davis,* the settlement at issue contemplated a permanent, partial disability which obviously could have increased had the worker experienced a worsening of the injury. Unlike the instant case, *Davis* did not involve a settlement which contemplated total disability, a disability which could not increase even if the worker's physical condition worsened.

Claimant and the employer, the parties to the agreement which is presently at issue, have no dispute with regard to its meaning. When claimant and the employer agreed to settle the claim, evidence had been introduced from three physicians which indicated that he suffered from category 2 disease, and there was no evidence of less than category ¼ disease. The applicable version of KRS 342.732 would have authorized an award of total disability due to pneumoconiosis based upon the evidence of category 2 disease. Claimant and the employer both assert that the agreement contemplated the compromise of a total disability which could not be reopened and increased even upon evidence of a worsening of claimant's condition. Stated otherwise, claimant and the employer both understood their agreement to provide that upon payment of the lump sum, any liability which the employer might have had for income benefits for claimant's pneumoconiosis was entirely extinguished. *See Newberg v. Chumley,* Ky., 824 S.W.2d 413 (1992). For that reason, when the claim was considered by the ALJ, both initially and at reopening, claimant conceded that he remained entitled to receive only that portion of any benefits for which the Special Fund was liable.

■ We have been referred to no authority which would permit claimant to reopen against the employer on these facts, and we are aware of none. Under those circumstances, we reject the Special Fund's argument that he was required to do so. We also reject the argument that the Special Fund should not be required to begin paying its share of the award entered at reopening until after the expiration of 25% of claimant's life expectancy. As effective on the date of last exposure KRS 342.120(8)(b) provided:

> In instances where the employer has settled its liability for income benefits and thereafter a determination has been made of the special fund's liability, the special fund portion of the benefit rate shall be paid over the maximum period provided for by statute for that disability, unless otherwise agreed by all parties.

In the instant case, the employer's liability was extinguished upon payment of the lump sum. We are persuaded that if any additional benefits are awarded at reopening, the Special Fund must begin paying its share of the award as of the date the motion to reopen was filed.

The decision of the Court of Appeals is affirmed, and the matter is remanded to the ALJ to enter an order granting the motion to reopen.

All concur.