Robert L. WHITTAKER, Director of the Special Fund Appellant,

v.

Clyde REEDER; Eastover Mining Company; Donald G. Smith, Administrative Law Judge; and Workers' Compensation Board Appellecs.

and

Eastover Mining Company Cross–Appellant,

v.

Clyde Reeder; Robert L. Whittaker, Director of Special Fund; Donald G. Smith, Administrative Law Judge; and Workers' Compensation Board Cross–Appellees.

No. 1999–SC–0796–WC, 1999–SC–0829–WC.

Supreme Court of Kentucky.

Aug. 24, 2000.

As Modified on Denial of Rehearing Nov. 22, 2000.

David R. Allen, Labor Cabinet—Special Fund, Frankfort, for Whittaker.

Antony Saragas, Huff Law Offices, Harlan, for Eastover Mining Co.

Edward L. Bowling, Stumbo, Bowling, & Barber, P.S.C., Middlesboro, for Reeder.

**OPINION**

LAMBERT, Chief Justice.

This appeal concerns whether, when considering an appeal following a reopening, the "new" Workers' Compensation Board (Board) exceeded its authority by considering *sua sponte* a substantial error in the calculation of the initial award and by directing the Administrative Law Judge (ALJ) to enter an award at reopening which was based upon a correct computation of the weekly benefit for the claimant's entire compensable occupational disability, with credit to the defendants in the amount of the overlapping benefits awarded by the "old" Board.

On December 1, 1978, claimant sustained a work-related back injury. He was 39 years old at the time, was married, and had four dependent children. He had a ninth grade education, no vocational training, and a work history consisting of various types of manual labor. In an award entered on December 22, 1980, the "old" Board determined that the injury resulted in a 50% occupational disability of which a 15% disability was classified as noncompensable. Benefits for a 15% disability were determined to be the responsibility of the employer, and benefits for a 20% disability were determined to be the responsibility of the Special Fund.[1] The award indicates that claimant's average weekly wage at the time was found to be $382 .89. The employer was ordered to pay temporary, total disability benefits, in the amount of $112.00 per week, from December 1, 1978 to January 2, 1979, after

---

1. This caused the employer to be responsible for 42.9% of the benefits awarded and the Special Fund to be responsible for the remaining 57.1% of the benefits.

which it was ordered to pay $16.80 per week for so long as claimant remained so disabled. It was also ordered to pay any reasonable and necessary medical expenses. The Special Fund was ordered to pay $22.40 per week from January 2, 1979, for so long as claimant remained so disabled. Consistent with the applicable version of KRS 342.120, the employer was ordered to pay the full $39.20 in weekly benefits, and the Special Fund was ordered to reimburse the employer, quarterly, for its share.

Claimant petitioned for reconsideration and later appealed to circuit court. His sole argument was that he should have been found to be totally disabled. In July, 1981, the Bell Circuit Court summarily affirmed the award, concluding that the medical evidence was substantial and supported the "old" Board's findings.

In October, 1993, claimant, the employer, and the Special Fund agreed to settle the outstanding balance of the award. The post-award agreement was prepared on a standard form which did not refer to the compromise of a particular percent of disability. The word "AWARDED" was typed on the form in response to the item "Probable length of disability." The agreement indicated that the claimant "shall receive compensation at the rate of $16.80 EMPLOYER and $22.40 SPECIAL FUND per week based upon an average weekly wage of $300.00." It indicated that benefits were to continue until November 15, 1992, and to be followed by a lump-sum payment of $17,000.00, of which $9,000.00 was from the employer and $8,000.00 was from the Special Fund. The agreement was approved by an Administrative Law Judge (ALJ) on November 22, 1993.

On January 30, 1997, claimant moved to reopen the award, alleging a worsening of his condition and an increase in occupational disability. The ALJ who considered the matter noted that the only question listed on the prehearing conference memorandum concerned whether claimant had demonstrated a worsening of condition since the award. After summarizing and comparing the evidence at the two points in time, the ALJ determined that claimant's occupational disability had increased from 50% to 60%. None of the increase was characterized as noncompensable; however, the employer was ordered to pay "$20.16 per week for 30% of a 60% disability," and the Special Fund was ordered to pay "$26.88 per week for 40% of a 60% disability." Stated otherwise, rather than excluding a 15% noncompensable disability and then apportioning the 45% compensable disability between the defendants, the ALJ apportioned the 60% disability in the same proportions as were present in the initial award. As a result, a portion of the increased occupational disability was classified as noncompensable. The procedure had the effect of increasing the noncompensable disability from a 15% disability to an 18% disability.[2] The defendants were granted credit "for any payment of such compensation heretofore made." Benefits were ordered payable for so long as claimant remained so disabled. The employer was ordered to pay all benefits for the number of weeks proportionate to its liability, and the Special Fund was ordered to pay all compensation thereafter. Each defendant was ordered to pay any interest which accrued during its payment period.

Claimant's petition for reconsideration asserted that the manner in which the

**2.** In the initial award, the 15% disability for which the employer was responsible accounted for 30% of the overall 50% disability ($16.80); at reopening, the employer was held liable for 30% of a 60% disability ($20.16). In the initial award, the 20% disability for which the Special Fund was responsible accounted for 40% of the overall 50% disability ($22.40); at reopening, the Special Fund was held liable for 40% of a 60% disability

($26.88). In the initial award, a 15% disability was characterized as noncompensable. It accounted for 30% of the 50% disability. Despite the fact that there was no finding of an increase in noncompensable disability, 30% of the 60% disability awarded at reopening (an 18% disability) was excluded as noncompensable; thus, the noncompensable disability was increased from 15% to 18%.

benefits were calculated at reopening was erroneous. He pointed out that there was no evidence of increased noncompensable disability at reopening but that the method of calculation which was employed had increased the amount of noncompensable disability in proportion to its share of the initial award. For that reason, he explained, the award entered at reopening effectively denied him compensation for part of the increase in his disability. He argued that the entire increase in occupational disability should have been apportioned between the employer and the Special Fund. Claimant also asserted that he should have been awarded a total disability. The petition was overruled.

The Special Fund's petition for reconsideration asserted that the post-award settlement had extinguished any liability for the initial award and that only an additional 10% disability should have been awarded at reopening. *See Newberg v. Davis,* Ky., 841 S.W.2d 164, 166 (1992). It also asserted that on the date of injury, the employer was required to pay all benefits and to be reimbursed by the Special Fund on a quarterly basis. Based upon the statutory maximum of $112.00 per week for a 1978 injury and the ratios employed by the ALJ, the Special Fund argued that the entire award at reopening should be for $11.20 per week, with the employer liable for 30% of that amount, the Special Fund liable for 40%, and the remaining 30% being noncompensable. Consistent with its argument, the Special Fund requested specific findings concerning whether any of the increased disability resulted from a nonwork-related automobile accident which occurred in 1981. The petition was overruled.

The employer's petition for reconsideration requested that the award be corrected to indicate that all compensation should be paid by the employer subject to quarterly reimbursement by the Special Fund. The petition was granted, and the award was corrected accordingly.

The employer and the Special Fund appealed, asserting that the post-award settlement had entirely extinguished their liability for the compensable portion of the initial 50% disability; therefore, the ALJ should have awarded only a 10% disability at reopening. In an alternative argument, they asserted that the ALJ had failed to clarify the manner in which the periodic and lump-sum payments under the prior award should be credited against the award entered at reopening; thus, they asserted that the award was not reasonably enforceable pursuant to KRS 342.305. They concluded that, in the least, they were entitled to credit for the weekly benefits initially awarded. Claimant argued that the award indicated that the defendants were to receive credit for any payments made under the initial award and should be affirmed.

The Board reversed the award as not being in conformity with the applicable law and remanded the matter for further proceedings before the ALJ; however, it did so for reasons other than those asserted by the employer and the Special Fund. First, the Board noted that the validity of the post-award settlement was not specifically raised by any party; however, it also noted that the face of the agreement appeared to indicate that neither the claimant nor the employer was represented by counsel but that the Special Fund was represented by counsel. Furthermore, the Board noted that the lump-sum figure contained in the agreement did not conform to the present value of what would have actually been due the claimant under the initial award and, by the Board's estimation, was only slightly more than half that amount. The Board also noted that the apportionment of the lump sum between the employer and the Special Fund as set forth in the agreement clearly was not in conformity with the initial award. The award had placed most of the liability on the Special Fund; whereas, the settlement agreement held the employer responsible for most of the lump sum. The Board noted that claimant had not challenged the settlement

before the ALJ at reopening and concluded, however reluctantly, that equity alone was not a sufficient basis to determine that claimant should recover what he gave up in the lump sum settlement. The Board concluded that the periodic and lump sum payments under the initial award must be credited against the award entered at reopening as though claimant had received the full amount of weekly benefits he was awarded. *Lincoln Coal Co. v. Watts,* 275 Ky. 130, 120 S.W.2d 1026, 1029 (1938).

The Board rejected the argument that claimant should have been awarded only a 10% disability at reopening. It emphasized that claimant's occupational disability at that time was 60% and explained that he should have been awarded a 60% disability from which the 15% prior active disability was excluded and against which the benefits ordered in the initial award were credited. The Board also explained that the calculation of weekly benefits in the initial award had been incorrect and, therefore, that the defendants were entitled to receive credit at reopening only for the benefits which were actually awarded rather than for the benefits which should have been awarded. The Board indicated that the error could not be corrected with regard to the amounts compromised by the post-award settlement. However, it determined that the ALJ must base the award at reopening upon a correct weekly benefit for claimant's entire compensable disability and credit the defendants for the overlapping benefits awarded in the initial award. Only then would claimant receive benefits at reopening which conformed to the provisions of Chapter 342 as effective at the time of injury. KRS 342.285(2)(c); *see also, Wheatley v. Bryant Auto Service,* Ky., 860 S.W.2d 767 (1993).

The Board explained that at the time of claimant's injury the law provided for a maximum benefit of $112.00 per week, without regard to whether the worker's occupational disability was partial or total. KRS 342.740. The Board concluded that claimant had been entitled to a total weekly benefit equal to the amount calculated pursuant to KRS 342.730(1)(b) or the statutory maximum of $112.00, whichever was less. *See C.E. Pennington Co. v. Winburn,* Ky., 537 S.W.2d 167 (1976). It noted, however, that the "old" Board had simply multiplied the weekly maximum of $112.00 by the percentage of disability when calculating the weekly benefit for the initial award, a method which was rejected by the Court in *Winburn* long before claimant's injury occurred. Under what appears to be a misperception that claimant's average weekly wage had not been determined in the initial award, the Board remanded for a finding in that regard. It also noted that, pursuant to the apportionment of the initial award, the employer should be liable for 42.9% of the benefits awarded at reopening, and the Special Fund should be responsible for the remaining 57.1% of the benefits.

The Special Fund appealed the decision; however, the Court of Appeals affirmed. In doing so, the court rejected an argument that the appeal of the initial award to circuit court precluded the Board's *sua sponte* application of KRS 342.285(2)(c) and the principles espoused in *Wheatley v. Bryant, supra,* to correct an error of law in the award which was entered at reopening. The court also rejected an argument that the post-award settlement entirely extinguished any liability the defendants might have for the 35% compensable disability which was the subject of the initial award. This appeal by the Special Fund and cross-appeal by the employer followed.

A review of the initial award indicates that the "old" Board found claimant's average weekly wage at the time of his injury to be $382.89. *Winburn, supra,* had already been decided when the initial award was entered; therefore, to the extent that the award provided for a weekly benefit which was inconsistent with Chapter 342 as construed in *Winburn,* the award was erroneous as a matter of law. The version of KRS 342.730(1)(b) which was effective on the date of injury provided for an in-

come benefit equal to 66⅔% of the worker's average weekly wage multiplied by the percentage of disability. 1976 Ky. Acts (Ex.Sess.) ch. 26, § 1. Applying *Winburn* to the present facts should have resulted in weekly compensation equal to the lesser of $112.00 or $89.35.[3] However, claimant was awarded $39.20 per week, an amount which was $50.15 less per week than the amount to which he was entitled under Chapter 342. At reopening, the ALJ calculated the increased award in proportion to the weekly benefit contained in the initial award, thereby compounding the error, and awarded benefits totalling $47.04 per week rather than the lesser of $112.00 or $114.87 per week.[4]

The Board determined that correction of the initial award was not authorized, a determination which the claimant does not dispute. Instead, the Board's decision had the effect of correcting the computational error prospectively, from the date of the motion to reopen, by requiring that the amount of weekly benefits awarded at reopening be consistent with the law which applied to the date of injury and by crediting against that amount the overlapping benefits awarded by the "old" Board. In contrast, the Special Fund and the employer assert that the award entered at reopening must only be for the additional 10% compensable occupational disability.

Claimant's motion to reopen was premised upon an increase of occupational disability since the initial award. The ALJ determined that claimant's occupational disability had increased to 60%. Although there was no finding of an increase in noncompensable disability, and a finding of increased noncompensable disability was refused when requested by the Special Fund, the manner in which benefits were calculated increased the amount of noncompensable disability. Furthermore, calculation of the weekly benefit which was awarded at reopening was based upon the erroneous figures contained in the initial

award. In view of the foregoing, it is clear that the award which was entered at reopening contained two errors in calculation and, therefore, did not conform to the provisions of Chapter 342.

■ Workers' compensation is a creature of statute. As set forth in Chapter 342, workers' compensation proceedings are administrative rather than judicial. Although the principles of error preservation, *res judicata*, and the law of the case apply to workers' compensation proceedings, they apply differently than in the context of a judicial action. For that reason, authority based upon judicial proceedings is not necessarily binding in the context of proceedings under Chapter 342.

■ A workers' compensation award which is final is enforceable as a final judgment. KRS 342.305. However, at all times pertinent to this appeal KRS 342.125 has provided some relief from the principle of the finality of judgments by authorizing the reopening of an otherwise final award under certain specified circumstances, among which are mistake and a change of condition which produces an increase in occupational disability. KRS 342.125 specifies that reopening is authorized either on the fact-finder's own motion or upon a motion of a party. Although a change in the law subsequent to an award will not support a motion to reopen and change the award, an error in applying the law as it existed at the time of the award is a proper basis to reopen. *Keefe v. O.K. Precision Tool & Die Co.*, Ky.App., 566 S.W.2d 804 (1978). A final award may be reopened *sua sponte* by the fact-finder for the correction of a mistake in applying the law as it existed at the time of the award. *See Wheatley v. Bryant, supra.* Even a pre-award settlement may be reopened in order to correct an error in calculating benefits and to conform the award to the law as it existed at the time the award was

---

**3.** 66⅔% × $382.89 × 35% (compensable disability) = $89.35.

**4.** 66⅔% × $382.89 × 45% (compensable disability) = $114.87.

sought. *Schulte v. Workmen's Compensation Board,* Ky.App., 571 S.W.2d 108 (1978). The right of a party to request a reopening is independent of the right of appeal. Although an appeal to a court precludes a subsequent reopening premised upon the same ground, it does not preclude a reopening based upon a different ground. *See Lincoln Coal Co. v. Watts,* 120 S.W.2d at 1028.

■ The legislature has indicated that the standard to be employed by the Board (and previously by the circuit court) when reviewing worker's compensation awards includes a consideration of whether the award in question conforms to the provisions of the Act. KRS 342.285(2)(c) [previously Ky. St. § 4935]. Since January 4, 1988, KRS 342.290 [previously Ky. St. § 4936] has provided that the scope of review by the Court of Appeals includes a consideration of all matters subject to review by the Board and errors of law arising before the Board. In *Vessels v. Brown–Forman,* Ky., 793 S.W.2d 795 (1990), we rejected the assertion that review by the Board was equivalent to review by a court and determined that since January 4, 1988, the first review of a workers' compensation award by a court occurs in the Court of Appeals. In *Muncy v. Muncy,* 242 Ky. 190, 45 S.W.2d 1034 (1932), overruled on other grounds in *Carnahan v. Yocom,* Ky., 526 S.W.2d 301, 303 (1975), we determined that whether an award conformed to the Act was a question of law which a court should review without regard to whether it was contested by a party. Subsequently, in *Schaab v. Irwin,* 298 Ky. 626, 183 S.W.2d 814 (1944), we construed KRS 342.285(2)(c) and KRS 342.290 as placing a duty on a reviewing court to determine whether an award was in conformity with the Act even if the question first arose there. When the foregoing statutes and decisions are considered in concert, it appears that the Board clearly was authorized to determine that the award which was entered at reopening did not conform to Chapter 342, regardless of whether the particular error in applying the law which caused the Board to reach that conclusion was contested by a party and regardless of whether the initial award was appealed on a different ground. Contrary to the view advanced by the employer and the Special Fund, we are not persuaded that *Rainey v. Mills,* Ky.App., 733 S.W.2d 756 (1987), controls these facts. Furthermore, there, the court based its conclusion upon authority which did not address the provisions of Chapter 342.

The sole issue raised in claimant's appeal to circuit court and the sole question addressed in the circuit court's order affirming the award concerned the extent of claimant's occupational disability. We are not persuaded that the appeal to circuit court converted what was an administrative award into a judicial award. Furthermore, we are not persuaded that the appeal of the initial finding of a 50% occupational disability precluded a subsequent application of KRS 342.125 or KRS 342.285(2)(c) with regard to errors in calculating the award which was entered at reopening. We conclude that the Board was within its authority pursuant to KRS 342.285(2)(c) when it determined that the award which was entered at reopening was erroneous as a matter of law because it did not conform to the provisions of Chapter 342 as effective on the date of claimant's injury.

In *Eaton Axle v. Nally,* Ky., 688 S.W.2d 334 (1985), we determined that a failure of the "old" Board to make an essential finding of fact constituted a patent error which must be brought to its attention by means of a petition for reconsideration. We indicated that in the absence of a petition for reconsideration, the decision would not be reversed or remanded by the circuit court in order to enable the essential finding to be made. We also indicated that our decision was to be applied prospectively. *Id.* at 338.

In the instant case, the "old" Board made all the necessary findings of fact. The error occurred in the "old" Board's

application of the law to the facts as found, *i.e.*, in failing to follow *Winburn, supra.* The initial award in the instant case was entered on December 22, 1980, more than four years before the decision in *Eaton Axle v. Nally;* therefore, we are not persuaded that the decision and its progeny govern the proceedings before the "old" Board in this case. In other words, claimant was not required to petition for reconsideration with regard to the calculation of his 1980 award. In any event, what is presently at issue is not the initial award but whether the award which was entered at reopening conformed to Chapter 342. Again, we note that the ALJ made all the necessary findings of fact at reopening and rejected claimant's petition for reconsideration concerning the error caused by using proportions to calculate the new award. We are not persuaded that claimant's failure to petition for reconsideration with regard to the application of *Winburn, supra,* precluded the Board from exercising its authority pursuant to KRS 342.285(2)(c) and determining that the award entered at reopening was not in conformity with Chapter 342.

■ The Special Fund and the employer direct our attention to *Whittaker v. Rowland,* Ky., 998 S.W.2d 479 (1999), a case which involved a pre-award agreement to settle a workers' compensation claim. Attempting to apply *Whittaker v. Rowland* to the instant facts, they assert that post-award agreement in the instant case represented a compromise of claimant's 50% disability. They conclude, therefore, that the 50% occupational disability set forth in the initial award should have been credited against the 60% disability which was present at reopening, with benefits being awarded only for the 10% increase in occupational disability. We disagree.

*Whittaker v. Rowland* concerned a pre-award settlement agreement in which the parties agreed to an amount of benefits based upon a percentage of disability which might or might not equal the worker's actual occupational disability. In contrast, the instant claim was fully litigated. In 1980, claimant was found to be 50% occupationally disabled by the "old" Board and was erroneously awarded benefits in the amount of $39.20 rather than $89.35 per week for life. Subsequently, the parties reached an agreement with regard to the future payment of the compensation which was awarded.[5] Nothing in the agreement refers to a percentage of disability. Unlike *Whittaker v. Rowland,* and *Newberg v. Davis, supra,* this appeal concerns a post-award agreement to reduce future weeks of the awarded benefits to a lump sum which represented their present value. Stated otherwise, claimant agreed to forego lifetime weekly benefits of $39.20 in exchange for a lump sum payment. Under such circumstances, the weekly benefits which were awarded in 1980 but foregone in exchange for the lump sum should be credited against the weekly benefits which were awarded at reopening. We note that this is the same method which was used in *Lincoln Coal Co. v. Watts, supra,* upon which the Special Fund relies in arguing that claimant compromised all compensation for the disability which existed at that time in exchange for the lump sum. Contrary to the view advanced by the Special Fund, the opinion makes it clear that the post-award lump sum which Watts received was in consideration of the $6.00 in weekly "compensation" which he relinquished in the agreement and that $6.00 per week should be credited against the $15.00 per week award which was entered at reopening. 120 S.W.2d at 1029.

■ In the instant case, the Board correctly pointed out that from the date of the motion to reopen, the percent of disability which existed at reopening superseded the percent of occupational disability

---

5. Lest there be any question, the figure for average weekly wage which was contained in the settlement agreement was not binding in the subsequent reopening. KRS 342.125(7) [formerly KRS 342.125(4)].

awarded in the initial proceeding. For that reason, the proper method at reopening is to award income benefits based upon the percent of occupational disability which exists at that time and to credit the defendants for any overlapping income benefits under the initial award. In instances where the income benefits awarded in the initial proceeding are subsequently compromised in exchange for a lump sum, the defendants are entitled to credit at reopening in an amount equal to what the overlapping income benefits would have been under the initial award. *See Lincoln Coal Co. v. Watts, supra.*

In summary, we conclude that the Board was within its authority to determine that the award which was entered at reopening did not conform to the provisions of Chapter 342 on the date of claimant's injury and to direct the ALJ to recalculate the award. At reopening, claimant was entitled to an award for a 60% occupational disability, of which a 45% disability was compensable. Under the law in effect on the date of injury, claimant's average weekly wage of $382.89 and his 45% compensable disability entitled him to a total weekly income benefit of $112.00. The defendants were entitled to a weekly credit of $39.20 for benefits awarded in the initial proceeding and later compromised for a lump sum payment.

The decision of the Court of Appeals is affirmed, and the matter is remanded to the ALJ for the entry of an award which is consistent with this opinion.

All concur.