CONTINENTAL AIR FILTER COMPA-
NY and Employers Mutual Liability In-
surance Company of Wisconsin, Mov-
ants,

v.

James S. BLAIR and Workers'
Compensation Board,
Respondents.

Supreme Court of Kentucky.

Dec. 6, 1984.

William P. Swain, Larry L. Johnson, Wil-
liam M. Newman, Jr., Boehl, Stopher,
Graves & Deindoerfer, Louisville, for mov-
ants.

W. Ken Nevitt, Louisville, for James S.
Blair.

J. Scott Getsinger, Workers' Compensa-
tion Bd., Frankfort, for Workers' Compen-
sation Bd.

STEPHENSON, Justice.

The Workers' Compensation Board re-
opened its award to James Blair and in-
creased his percentage of disability from 50
percent to 100 percent. This procedure
was based on a change in economic condi-
tions. The trial court affirmed, and the
Court of Appeals affirmed the theory of
the reopening. We granted discretionary
review and reverse.

James Blair was involved in a work-relat-
ed industrial accident in which he lost all
his fingers except for one index finger and
both thumbs. Blair was awarded 50-per-
cent disability. Continental had created a
new job for Blair which did not require him
to use his hands. He was later transferred
to another job on the night shift and then
to a third job when the night shift was
abolished. Blair worked on the last job one
day and quit, stating he could not perform
the work. There is a dispute as to the
reason for Blair quitting, dislike of the
foreman or intent to take early retirement.

Blair filed a motion with the Workers'
Compensation Board to reopen his claim
under KRS 342.125. The change of condi-
tions asserted by Blair was not a change of
physical condition, but a change in his eco-
nomic condition. No medical testimony
was offered, and there is no claim of any
change in physical condition. The trial
court affirmed the Board, and the Court of
Appeals affirmed holding that a change in
economic condition is sufficient to fulfill
the reopening requirements of KRS 342.-
125.

KRS 342.125(1), concerning this proposition, provides in part:

"Upon its own motion or upon the application of any party interested and a *showing of change of condition*, mistake or fraud or newly discovered evidence, the board may at any time review an award or order . . . ." [Emphasis added.]

The difficulty with the decision of the Court of Appeals is that it attempts to finesse a long-standing holding of this court that "change of conditions" in the Act means change in physical condition.

This interpretation of change in condition is exemplified in *Osborne v. Johnson*, Ky., 432 S.W.2d 800, 804 (1968), where we said:

"Since the determination of post-injury earning capacity is to be based on normal economic conditions, it follows that a mere fluctuation in economic conditions will not be considered a 'change in conditions' within the meaning of the reopening statute, KRS 342.125. As we interpret the statute, the change of conditions contemplated is a change of the workman's *physical* condition."

All the cases that have relied on *Osborne* have referred to "change of conditions" as "functional disability," i.e. physical condition.

The Court of Appeals cited *Osborne* and *Central City v. Anderson*, Ky., 521 S.W.2d 246 (1975), and expressed the opinion these two cases must be restricted to their facts, thereby distinguishing the two cases from the situation presented here.

We are of the opinion the fact situation here falls directly within the rule in *Osborne* and that the Court of Appeals' decision is erroneous in holding otherwise.

We have not attempted to list the opinions of this court following the rule in *Osborne*. It is sufficient to state again that a change in economic conditions is not a ground for reopening an award under KRS 342.125(1). A reopening must be based on a change in physical condition. We recognize that the language of the statute is susceptible to a different interpretation. However, our interpretation in *Os-*

*borne* and other cases is too well settled to change in the absence of action by the General Assembly.

The decision of the Court of Appeals is reversed with directions that the judgment of the trial court be reversed.

STEPHENS, C.J., and GANT, STEPHENSON, VANCE and WINTERSHEIMER, JJ., concur.

LEIBSON and AKER, JJ., dissent and file a separate dissenting opinion.

LEIBSON, Justice, dissenting.

Respectfully I dissent. KRS 342.125 allows for reopening based upon "a showing of change of conditions," not restricted to *physical* condition. *Osborne v. Johnson*, Ky., 432 S.W.2d 800 (1968), should be interpreted to mean only that the "change of conditions" contemplated by the statute is *normally* a change in "physical condition," not to mean *exclusively* a change in physical condition.

The majority opinion holds that the general statement of the law in *Osborne v. Johnson* admits of no exception. The statutory language is not exclusive. There should be exceptions where the facts warrant it. This is such a case.

Here, in 1978 the employer avoided a 100% occupational disability award by creating a new job for the disabled worker. The 1978 Opinion and Award states:

"[W]e would have to find this man 100% occupationally disabled if he were not working, of course this can be re-opened upon a change of condition pursuant to KRS 342.125."

The appellant argued that the employee should have appealed the award if dissatisfied with 50%. But that was only a part of the Board's "Findings." The other part was that the case "can be reopened upon a change of condition." This language, when referenced to the type of injury (traumatic amputation of the employee's fingers) could only mean a change in working conditions and not a subsequent change in physical condition. The change in physical con-

dition was sudden and complete at the time of injury. In the particular circumstances of this case it would be as reasonable, if not more reasonable, to assume that the employer accepted *all* of the Board's 1978 findings (or would have appealed), as to assume the employee should have appealed.

The new job that was created has now been eliminated. The employee testified that the last position to which he was finally shifted is not suitable to his condition of disability. The majority opinion focuses on the employer's testimony regarding statements by the employee suggesting that he was retiring, rather than leaving because of his disability. But the employee testified that he had neither the physical nor mental capabilities to perform this new job. This evidence supports the award.

The Board kept faith with its previous opinion. It found the employee had undergone a "change of conditions" entitling him to an increased award for total occupational disability, limiting its decision to the facts of this case. Had the Board found otherwise, it would encourage employers to place a seriously injured employee in a light duty position, and then effect his termination after the occupational disability award becomes final. The majority opinion in this case may provide such encouragement.

The evidence at the time of the 1978 award supported a finding that this employee was 100% disabled. It was only the fact that he had a special job created for him that kept him from getting this award. KRS 342.620(11) defines "disability" as meaning "a decrease of wage earning capacity due to injury or loss of ability to compete to obtain the kind of work the employee is customarily able to do ...." Although the key word is "capacity" and continued employment at an equal or greater earnings need not be critical to the issue, as a practical matter it is difficult for the Board to avoid taking into consideration continued employment at equal or greater pay in making an award. Had the Board

awarded 100% initially in this case, it would have appeared grossly unfair.

The Board has found that there has been a change in occupational condition, not just economic condition. The record sufficiently supports the finding of the Board. I would affirm.

AKER, J., joins in this dissent.