Robert L. WHITTAKER, Acting Director of Special Fund, Successor to Special Fund, Appellant,

v.

Dorothy McCLURE, Gamco Products Company, and Workers' Compensation Board, Appellees.

No. 94–SC–340–WC.

Supreme Court of Kentucky.

Jan. 19, 1995.

David Randall Allen, Labor Cabinet, Special Fund, Louisville, for appellant.

James G. Esser, Henderson, for appellee McClure.

Michael W. Alvey, Henderson, for appellee Gamco Products Co.

## OPINION OF THE COURT

This case concerns: 1.) whether the penalty which is assessed against the recovery of a worker whose injury results from the willful violation of a known safety rule is computed as 15% of the entire award or 15% of that portion of the award to be paid by the employer, and 2.) if the penalty applies to the entire award, whether the Special Fund is entitled to receive a proportional share of the penalty. KRS 342.165.

Claimant was awarded a 100% disability, with 4% being designated as prior, active, and noncompensable. Of the compensable portion, 72% was apportioned to the employer and 24% to the Special Fund. The Administrative Law Judge (ALJ) determined that claimant's injury was substantially caused by her willful violation of a safety rule and imposed a 15% penalty reduction in that portion of the award to be paid by the employer, pursuant to KRS 342.165. Because the ALJ determined that the penalty provision applied only to the employer's portion of the award, the Special Fund was required to pay the entire sum for which it was deemed liable.

The decision was affirmed, in part, by a two to one decision of the Workers' Compensation Board (Board). The ALJ's decision to allow a penalty reduction only to the employer was affirmed. However, because the Board noted that the method of calculating the penalty employed by the ALJ would result in the employer receiving an actual credit of only 11.25% of its share of the award, it reversed the ALJ's decision to the extent that it did not give full effect to KRS 342.165. The Board determined that the credit to the employer should be computed as 15% of the entire weekly award and deducted throughout the employer's payment period. This would result in a penalty equal to 15% of the employer's share of the award.

Board Member Turner dissented from that portion of the opinion which affirmed the ALJ's refusal to enforce the penalty during the Special Fund's period of payment as well as during the employer's. The dissent pointed out that claimant violated a safety rule but would avoid forfeiting one-fourth of the 15% penalty simply because one-fourth of the award was to be paid by the Special Fund rather than by the employer. The dissent also pointed out that, under the logic of the majority opinion, an employer who failed to enforce a safety rule would avoid paying part of the 15% penalty on any award in which the Special Fund also was liable.

The Board's decision was affirmed by a unanimous panel of the Court of Appeals.

The stated purpose in enacting the Kentucky Occupational Health and Safety Act (KOSHA) was "to promote the safety, health and general welfare of its people by preventing any detriment to the safety and health of all employees ... arising out of exposure to harmful conditions and practices at places of work...." KRS 338.011. It is apparent that the legislature recognized the joint responsibility for workplace safety which is shared by employers and workers and provided accordingly. Employers have an obligation to provide a place of employment that is free from recognized hazards to workers' health and safety[1]; whereas, workers have the obligation to comply with health and safety provisions. KRS 338.031. As a result of KOSHA, workplace safety provisions have been established in order to protect workers from injury. However, such

---

1. This obligation includes enforcing provisions for workplace safety as well as following provisions aimed at creating a safe workplace.

provisions are effective only if they are followed and enforced by workers and by employers. In imposing penalties on workers and employers whose violation of a known safety rule results in injury to the worker, the legislature provided incentives for following and enforcing safety rules which are consistent with its goals of providing a safer workplace and reducing the number of compensable injuries. See KRS 342.165. To be most effective, the amount of such a penalty should not be affected by whether the Special Fund is partially liable for the payment of income benefits. This is because Special Fund liability for a portion of income benefits does not in any way diminish the desirability of encouraging workers and their employers to practice workplace safety. It is noteworthy that KRS 342.165 does not refer in any way to the Special Fund.

Contrary to the view taken by the Court of Appeals, we find nothing in *Barmet of Kentucky, Inc. v. Sallee*, Ky.App., 605 S.W.2d 29 (1980), which supports a conclusion that KRS 342.165 is directed against employer misconduct but not against worker misconduct. Furthermore, such a conclusion would be contrary to the plain language of the statute. The opinion in *Barmet* reaffirmed that KRS 338.031 did not preclude the assessment of a penalty pursuant to KRS 342.165 in a workers' compensation case which involved a KOSHA violation. In that case it was questionable whether or not there was a safety rule prohibiting the worker's conduct. Furthermore, the court determined that, even if such a rule had existed, it was not enforced by the employer or followed as a general policy. Under such circumstances, it could not be said that the employer had proved a knowing violation of a safety rule by the worker. In other words, even where a safety rule exists, if the employer fails to enforce the rule, it cannot hope to penalize a worker for failing to follow the rule. The decision in *Barmet* was consistent with the legislature's purpose in setting forth corresponding employer and worker obligations in KRS 338.031 and with the purpose of the penalty provisions contained in KRS 342.165.

KRS 342.165, as it applies to this case, provided as follows:

If an accident is caused in any degree by the intentional failure of the employer to comply with any specific statute or lawful regulation made thereunder, communicated to such employer and relative to installation or maintenance of safety appliances or methods, the compensation for which the employer would otherwise have been liable under this chapter shall be increased fifteen percent in the amount of each payment. If an accident is caused in any degree by the intentional failure of the employe to use any safety appliance furnished by the employer or to obey any lawful and reasonable rule, order or regulation of the board or the employer for the safety of employes or the public, the compensation for which the employer would otherwise have been liable under this chapter, shall be decreased fifteen percent in the amount of each payment.

This statute was enacted before the 1982 amendments to KRS 342.120 changed the payment scheme for workers' compensation awards and has not been amended in accordance with those changes. Before the effective date of the 1982 amendments to KRS 342.120, the employer was directly liable for payment of the entire award of income benefits and was reimbursed by the Special Fund to the extent of its liability. However, since 1982, the employer and the Special Fund are in the posture of co-defendants in workers' compensation cases, and each is directly liable to the injured worker only for its portion of the overall award. *Palmore v. Helton*, Ky., 779 S.W.2d 196 (1989). Although it is apparent that, before 1982, the 15% penalty set forth in KRS 342.165 could be applied to the entire award of income benefits and still come within the compensation "for which the employer would otherwise have been liable;" since 1982, the clear language of KRS 342.165 would permit the 15% penalty to be applied only to that portion of the award determined to be the liability of the employer.

We recognize that this construction results in the unequal treatment of equally culpable workers and employers based solely upon the extent of the Special Fund's liability on the claim. As noted by Board Member Turner,

in the instant case, the penalty would equal 15% of only three-fourths of the award because one-fourth of the award was apportioned to the Special Fund. In a case where the entire liability was apportioned against the Special Fund, the statute would provide for no penalty whatever against an injured worker, even though the injury was caused by the worker's own violation of a known safety rule. Likewise, where the entire liability was apportioned against the Special Fund, an employer whose knowing violation of a safety rule was a cause of the worker's injury would pay no penalty whatever. In other words, the interaction of the present version of KRS 342.120 with KRS 342.165 affects the computation of the penalty for a safety violation so that the greater the Special Fund's liability, the less the penalty against the culpable party.

As noted by the Special Fund, the goal of promoting workplace safety would more effectively be served if KRS 342.165 provided for a 15% penalty on the entire award of income benefits, regardless of whether it is a penalty against the worker or against the employer. We also note that such a result would be consistent with the philosophy expressed in Larson, *The Law of Workmen's Compensation*, § 70, *et seq.*, that where worker misconduct results in a penalty against the workers' compensation award rather than an entire loss of benefits, the statute providing for the penalty should be interpreted in a manner which will discourage safety violations. However, the plain language of KRS 342.165 does not allow for such a construction, and it is the role of the legislature, not this Court, to draft effective statutory provisions.

■ We recognize that courts are directed to construe statutes "with a view to promote their objects and carry out the intent of the legislature;" however, they are also directed to construe statutory language according to its plain meaning. KRS 446.080. Where the language of a statute is clear on its face, the Court is not free to construe it otherwise even though such construction might be more in keeping with the statute's apparent purpose. Although we believe that the plain language of KRS 342.165 may, in certain instances, produce results that are contrary to its apparent purpose, we are nonetheless, constrained to follow that language, which clearly bases the 15% penalty only on that portion of the award apportioned to the employer.

The Special Fund argues not only that the 15% penalty should be assessed against the entire award but also that it should be the beneficiary of the penalty reduction in proportion to its liability on the claim. However, KRS 342.165 makes no reference to the Special Fund, which has no responsibility for workplace safety and is not in a position to promote workplace safety. Furthermore, as we have already discussed, the liability of the Special Fund in workers' compensation cases is now direct and not derivative. Therefore, the Special Fund cannot properly assert that it is subrogated to the interests of the employer in a credit against the award.

Contrary to the Special Fund's argument, the issues present in *Flenco, Inc. v. Beale,* Ky., 812 S.W.2d 711 (1991), are distinguishable from those present herein. That case involved a question of whether the employer had met its appellate burden of showing that the evidence compelled a finding of Special Fund liability. Because it was not unreasonable for the Board to have concluded from the evidence that the disability resulting from the combination of the injury and its complications was sufficient, in and of itself, to render the claimant totally disabled, this Court held that all liability was properly allocated to the employer. *Id.* at 713. That case does not apply to the questions present herein.

We recognize that the Special Fund is required to pay compensation benefits for workplace injuries, as set forth in KRS 342.120, regardless of whether they result from either a worker or employer safety violation. In view of this, the argument that the Special Fund should benefit proportionally where a workers' compensation award is reduced pursuant to KRS 342.165 has some merit. However, as it is written, KRS 342.165 does not mention the Special Fund, even though it suffers a financial detriment when either an employer or worker safety violation results in a workplace injury.

Therefore the statute's only apparent purpose is to penalize safety violations as a means of deterring such conduct, and we believe that any redress of the resulting physical injury or financial detriment is only incidental to that purpose. The policy considerations against a double recovery that were present in *Cabe v. Popham*, Ky., 444 S.W.2d 910 (1969), are not present herein, and we are reluctant to conclude that the legislature intended the Special Fund to benefit in any way from the penalty provisions set forth in KRS 342.165, absent an express provision to that effect. If we have misconstrued the legislature's intent in that regard, it is, of course, always free to amend the statute accordingly.

The decision of the Court of Appeals is hereby affirmed.

All concur.