**BENSON'S INC., Appellant,**

v.

Gail **FIELDS**; William O. Windchy, Acting Director of Special Fund; Now Robert E. Spurlin, Director of Special Fund; Roger D. Riggs, Administrative Law Judge; and Workers' Compensation Board, Appellees.

No. 96–SC–582–WC.

Supreme Court of Kentucky.

March 27, 1997.

Carole Meller Pearlman, Williams & Wagoner, Louisville, for Appellant.

Christopher J. Mehling, Covington, for Appellee Fields.

Judith K. Bartholomew, Labor Cabinet, Special Fund, Louisville, for Appellee Windchy, etc.

## OPINION OF THE COURT

This appeal by an employer concerns whether KRS 342.1202(2), the 1994 amendment to KRS 342.1202, was remedial in nature and may be applied retroactively to a claim which arose before its effective date.

Claimant injured her back at work in April, 1993. After reviewing the evidence, the Administrative Law Judge (ALJ) determined that claimant was totally, occupationally disabled as a result of the injury. The ALJ found that, absent claimant's preexisting psychiatric condition, the subject injury would have caused no permanent occupational disability. The entire occupational disability was attributable to the preexisting psychiatric condition. The ALJ further determined that one-third of the disability was active at the time of the back injury and that the remaining two-thirds of the disability was due to the arousal of the preexisting psychiatric condition by the back injury. All liability for the compensable portion of the award was apportioned to the Special Fund pursuant to KRS 342.120 and the decision in *Accuride v. Donahoo,* Ky., 865 S.W.2d 652 (1993).

In its petition for reconsideration, the Special Fund argued that the dollar amount of the weekly benefit had been miscalculated and requested a correction. The Special Fund also argued that KRS 342.1202, as amended effective April 4, 1994, was remedial legislation which applied to the claim. Therefore, the Special Fund could not be held liable for more than 50% of the award. The weekly amount of the award was corrected, but the petition was otherwise overruled.

The Special Fund appealed, arguing that since the award was based in part on a preexisting condition of the back, it could not be held liable for more than 50% of the award. KRS 342.1202(1). As further evidence that the automatic apportionment provision of KRS 342.1202(1) rather than KRS 342.120 controlled the issue of apportionment, the Special Fund emphasized that the psychiatric condition was superimposed on or

occurred in combination with the back injury, citing *Heartland Health Care Center v. Maupin,* Ky., 887 S.W.2d 553 (1994), and *Fischer Packing Co. v. Lanham,* Ky., 804 S.W.2d 4 (1991). The Special Fund's second argument was that the 1994 amendment to KRS 342.1202, which became effective while the claim was pending before the ALJ and which provided that the Special Fund's liability shall not exceed 50% of a permanent disability award, was remedial and applied to the subject claim.

The Workers' Compensation Board (Board) rejected both arguments and affirmed the ALJ in that regard. The Board emphasized that claimant's award was not based on a preexisting condition of the back but on a preexisting psychiatric condition. Therefore, the ALJ did not err in failing to apply the automatic apportionment provisions of KRS 342.1202. Furthermore, the Board noted that application of the 1994 amendment, which became effective more than one year after the subject injury, would impair the employer's vested rights since the amendment placed greater liability on the employer than did the law in effect on the date of injury. *See Inland Steel Co. v. Mullins,* Ky., 367 S.W.2d 250 (1963).

The Special Fund appealed concerning the applicability of the 1994 amendment to the claim. Whereupon, the Court of Appeals reversed the decision of the Board, relying upon KRS 446.080(1); *Thornsbury v. Aero Energy,* Ky., 908 S.W.2d 109 (1995); *Peabody Coal Co. v. Gossett,* Ky., 819 S.W.2d 33 (1991); and *Kentucky Insurance Guaranty Association v. Conco, Inc.,* Ky.App., 882 S.W.2d 129 (1994). The Court of Appeals then stated its opinion that the amendment did not "impair the vested rights of the employer, but merely adjust[ed] the degree to which liability may be shared by the Special Fund."

■ KRS 342.1202(2) provides as follows: The special fund's liability for income benefits for all other injury claims shall not exceed fifty percent (50%) of the income benefits awarded for permanent disability. In those injury claims where the administrative law judge determines that the apportionment to the special fund under KRS 342.120 exceeds fifty percent (50%) of the award of permanent disability, that portion of the award exceeding fifty percent (50%) shall be paid by the employer.

KRS 446.080(3) provides that "[n]o statute shall be construed to be retroactive, unless expressly so declared." Nonetheless, legislation has been applied to causes of action which arose before its effective date, in the absence of an express declaration that the provision is to be so applied, in those instances where the courts have determined that the provision was remedial or procedural in nature and that retroactive application of the provision was consistent with the legislative intent. *See* KRS 446.080(1).

■ The Special Fund argues that in view of the emergency declaration and the "crisis" in the workers' compensation program, the 1994 amendment is remedial in nature. However, the significance of an emergency clause is that legislation containing such a clause becomes effective upon approval of the Governor rather than ninety days after adjournment of the session in which it is passed. Ky. Const. § 55. Emergency legislation may or may not be remedial in nature. In the absence of an express statement that a particular piece of legislation is remedial and is to apply to antecedent causes of action, the presence of an emergency clause does not necessarily indicate a legislative intent that it be so applied. Neither the emergency clause nor any other provision of House Bill 928 provides that the 1994 amendment to KRS 342.1202 shall be construed as retroactive. Therefore, the question becomes whether it appears that the legislature intended for the amendment to be applied retroactively. We are not persuaded that it did.

In *Gossett,* upon which the Court of Appeals relied, we explained the concepts of remedial and retrospective legislation as follows:

A retrospective law, in a legal sense, is one which takes away or impairs vested rights acquired under existing laws, or which creates a new obligation and imposes a new duty, or attaches a new disability, in respect to transactions or considerations

already past. Therefore, despite the existence of some contrary authority, remedial statutes, or statutes relating to remedies or modes of procedure, which do not create new or take away vested rights, but only operate in furtherance of the remedy or confirmation of such rights, do not normally come within the legal conception of a retrospective law, or the general rule against the retrospective operation of statutes. In this connection it has been said that a remedial statute must be so construed as to make it effect the evident purpose for which it was enacted, so that if the reason of the statute extends to past transactions, as well as to those in the future, then it will be so applied although the statute does not in terms so direct, unless to do so would impair some vested right or violate some constitutional guaranty. 73 Am.Jur.2d *Statutes* § 354 (1974) (Footnotes omitted).

819 S.W.2d at 36.

Before 1987, KRS 342.125 permitted the reopening of a workers' compensation award upon a showing of a "change of condition," a standard which was construed as requiring a change of physical condition as well as a change of occupational disability. *Continental Air Filter v. Blair,* Ky., 681 S.W.2d 427 (1984). In *Gossett,* the worker had returned to work at the time he was awarded benefits due to a work-related eye injury. Subsequently, he was laid off. He alleged that, although he had experienced no physical change since the award, he was unable to find other employment due to the injury. Therefore, he sought to reopen the award. The Court recognized that workers' compensation awards were based on occupational rather than functional disability and determined that the 1987 amendment to KRS 342.125, which permitted the reopening of a claim upon a showing of a "change of occupational disability," was remedial legislation which was consistent with the purpose of the reopening statute. Therefore, we determined that the amendment did not come within the legal conception of a retrospective law and could properly be applied to a claim which arose before its effective date.

*Thornsbury,* upon which the Court of Appeals also relied, concerned the 1994 amendment to KRS 342.732(1)(a) and is distinguishable. There, the Court observed that the retraining incentive benefit was available to coal workers who had contracted category 1 pneumoconiosis but who did not demonstrate a significant respiratory impairment and, therefore, had not sustained an occupational disability. The purpose of the benefit was to enable such workers to retrain, with the goal of encouraging them to obtain employment outside the mining industry before they became occupationally disabled. The Court observed that the remedy contained in the pre–1994 version of KRS 342.732(1)(a) was ineffective in accomplishing that purpose. 908 S.W.2d at 112. Since the apparent reason for amending KRS 342.732(1)(a) was to substitute a remedy which was more likely to accomplish the purpose for which the provision was created, the 1994 amendment was determined to be remedial in nature. Therefore, the amendment could properly be applied to claims which arose before its effective date. Unlike amendments affecting the level of income benefits payable in compensation for the impairment of a worker's ability to earn an income, the amendment at issue in *Thornsbury* did not alter a substantive right. *See Beth–Elkhorn v. Thomas,* Ky., 404 S.W.2d 16 (1966); *Maggard v. International Harvester,* Ky., 508 S.W.2d 777 (1974).

Likewise, *Conco* is distinguishable. That case concerned whether the extent of the Kentucky Insurance Guaranty Association's (KIGA's) obligation to pay an employer's share of a workers' compensation award after the employer's insurer became insolvent was affected by an amendment which removed the $50,000 cap on KIGA's liability for workers' compensation claims. In that case, the Court of Appeals noted that KIGA is an entity created by the legislature for the protection of the public against insolvent insurers. KRS 304.36–020. The Court concluded that, in removing the cap on KIGA'S liability for workers' compensation claims, the legislature intended to enhance the protection of injured workers and their employers. Therefore, the Court concluded that the amendment operated in furtherance of the remedy and could properly be applied to an

antecedent cause of action. *See* KRS 304.36–040.

■ The employer and the Special Fund are in the position of co-defendants in workers' compensation cases, with each having primary liability to the injured worker. *Palmore v. Helton,* Ky., 779 S.W.2d 196 (1989). *Conco* did not involve the shifting of primary liability from one defendant to another but the extent to which KIGA was required to assume the obligation of an insolvent insurer to cover the employer's liability for its share of an award. Therefore, we do not find the decision in *Conco* to be persuasive under the present circumstances.

Here, the ALJ determined that, absent the preexisting psychiatric condition, the work-related injury would have resulted in no occupational disability. Therefore, the Special Fund was held liable for the entire compensable portion of the disability. By limiting the Special Fund's liability to 50% of the award for permanent disability, KRS 342.1202(2) would operate to shift a portion of the liability from the Special Fund to the employer. Under those circumstances, we conclude that the changes in the liability of the defendants embodied in KRS 342.1202(2) were substantive rather than remedial or procedural in nature. Therefore, in the absence of an express statement to that effect, we are not persuaded that the legislature intended for the amendment to be applied to causes of action which arose before its effective date.

The decision of the Court of Appeals is hereby reversed, and the decision of the ALJ is reinstated.

All concur.