RENDERED:  OCTOBER 31, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

### NO. 2025-CA-0232-MR

GRF REPAIR AND WELDING, LLC                  APPELLANT

                   APPEAL FROM PULASKI CIRCUIT COURT
v.              HONORABLE TERESA WHITAKER, JUDGE
                   ACTION NO. 22-CI-00927

RIVER METAL[1] RECYCLING, LLC                APPELLEE

### OPINION
### AFFIRMING

** ** ** ** **

BEFORE:  COMBS, A. JONES, AND LAMBERT, JUDGES.

COMBS, JUDGE:  GRF Repair and Welding LLC (GRF), appeals from an order of the Pulaski Circuit Court entered on February 7, 2025.  This is a civil action centered on a business transaction between the parties in which the circuit court rejected GRF's claim to a statutory lien against property owned by River Metals Recycling, LLC (River Metals).  After our review, we affirm.

---

[1] The notice of appeal lists appellee as "River Metal Recycling, LLC."  The record of the circuit court identifies the appellee as "River Metals Recycling, LLC."  This Opinion will use the same.

GRF is a metal fabrication and repair company that regularly serviced large-scale industrial equipment for River Metals. While the parties cannot agree on the exact date, River Metals delivered its transportable scrap-metal baler to GRF's premises in Somerset for repairs and modifications. When a dispute arose between the parties concerning an entirely different matter, their amicable business relationship promptly dissolved.

Thereafter, in November 2022, GRF filed a complaint against River Metals in Pulaski Circuit Court. GRF alleged that the cost of labor and materials to make the repairs to the baler totaled $8,000. It also alleged that while River Metals had asked GRF repeatedly to "hold off" on the modifications that River Metals had originally envisioned as necessary for the baler, it had become clear that River Metals "was not serious about moving forward with the modifications." GRF alleged that it "was never given a clear directive" as to River Metals's acceptance or denial of the quote for the modifications. As a result, GRF eventually asked River Metals to remove the baler from its premises. GRF alleged that the baler had been in its possession for more than five years -- incurring storage fees of $45 per day. GRF sought to enforce a statutory lien pursuant to the provisions of KRS[2] 376.270 for the costs of repairs and storage fees.

---

[2] Kentucky Revised Statutes.

River Metals answered the complaint. It claimed that it had routinely paid GRF according to the invoices submitted. It denied that it owed any storage fees and contended that the baler was not subject to the statutory lien created by the provisions of KRS 376.270 as the baler is **not** a motor vehicle.

In July 2023, River Metals requested an order allowing it to remove its baler and other equipment and tools from GRF's premises. In November 2023, GRF responded to the motion filed by River Metals. GRF rejected the position of River Metals that the baler, described as weighing 30 to 40 tons and requiring transportation by means of a semi-tractor, is not a motor vehicle. It reasoned by analogy that just as a boat meets the statutory definition of "motor vehicle," so does the baler. It argued that "[t]here is no difference transporting the [b]aler on a public highway versus a boat." However, GRF contended that it was entitled to retain possession of the baler in order to enforce its statutory lien. GRF's counsel withdrew, and the motion was not heard until January 19, 2024.

By its Order entered on January 31, 2024, the circuit court authorized River Metals to remove its property from GRF's premises. River Metals was ordered to pay an $8,000 invoice. The invoice was paid, and River Metals removed its baler in early February 2024. The court invited the parties to submit memoranda concerning the only remaining issue -- the disputed storage fees.

-3-

In an Order entered on February 7, 2025, the trial court observed that the baler was designed to crush vehicles or other scrap metals into a solid block of metal and was incapable of moving along a highway under its own propulsion. It concluded that the baler was not a motor vehicle "used or designed for operation on the public highways" as the phrase is used in the provisions of KRS 376.270 and that GRF was not entitled to a lien to recover storage fees pursuant to the statute. This appeal followed.

As its single issue on appeal, GRF argues that the trial court erred by concluding that the baler did not meet the definition of "motor vehicle" under the provisions of KRS 376.270. It argues that the court's interpretation of the term is "overly narrow and inconsistent with the legislative intent of the statute." We disagree.

For the benefit of those in the business of repairing motor vehicles, the relevant portions of KRS 376.270 create a lien for the reasonable or agreed charges for repairs to a motor vehicle and for its storage. KRS 376.268 expressly applies to "vessels used or designed for navigation of or operation on waterways, rivers, lakes, and streams" and (per KRS 376.281) "vehicles used or designed for navigation of or flight in the air," and it otherwise defines a "motor vehicle" as a vehicle "used or designed for operation on the public highways." While not separately defined by the statute, the term "vehicle" is ordinarily associated with

the transportation of people or goods.  The outcome of this appeal depends on whether the baler qualifies as a "motor vehicle" as contemplated by the lien statute.

The trial court's construction of the statute is not entitled to deference on appeal; instead, we review matters of statutory construction *de novo*. *Normandy Farm, LLC v. Kenneth McPeek Racing Stable, Inc.*, 701 S.W.3d 129, 135 (Ky. 2024) (citing *Blackaby v. Barnes*, 614 S.W.3d 897, 901 (Ky. 2021); *Cumberland Valley Contractors, Inc. v. Bell Cnty. Coal Corp.*, 238 S.W.3d 644, 647 (Ky. 2007)).  The cardinal rule of statutory construction is to give effect to the legislature's intent.  *MPM Financial Group, Inc. v. Morton*, 289 S.W.3d 193, 197 (Ky. 2009) (citing *Cabinet for Human Resources, Interim Office of Health Planning and Certification v. Jewish Hospital Healthcare Services, Inc.*, 932 S.W.2d 388, 390 (Ky. App. 1996)).

In order to discern legislative intent, we typically rely upon the everyday meaning of the particular words chosen by the legislature.  *McMillin v. Sanchez*, 686 S.W.3d 145, 148 (Ky. 2024).  Where the text of a statute is clear and unambiguous on its face, we are not free to construe its language otherwise. *Whittaker v. McClure*, 891 S.W.2d 80, 83 (Ky. 1995).  "[S]tatutes must be given their literal interpretation unless they are ambiguous and if the words are not ambiguous, no statutory construction is required."  *McMillin*, 686 S.W.3d at 148 (citing *Commonwealth v. Plowman*, 86 S.W.3d 47, 49 (Ky. 2002)).

In addition to vehicles used in flight and vessels used to navigate waterways, the statute applies to motor vehicles "used or designed for operation on the public highways[.]" KRS 376.268. The term "motor vehicle" is clearly defined by the statutory provisions both in its plain text and context, and it does not encompass the baler. The heavy equipment delivered to GRF by River Metals has a specific use and design that do **not** include operation on the public highways. In fact, GRF acknowledges that for its relocation, the heavy equipment itself requires the use of a specialized transportation vehicle. The baler is not used or designed to transport persons or goods which could render it a "vehicle" as that word is commonly used. Instead, the baler is a piece of industrial equipment which is only passively portable through specialized towing processes across public highways.

Nevertheless, GRF argues that public policy would be better served if the provision were interpreted to include equipment that "[runs] with its own engine, requires a human operator, and performs essential industrial functions when stationary" -- characteristics that "align it with other equipment such as [vessels and airplanes]" expressly encompassed by the statute's provisions. However, where the meaning of the statute is unambiguous and we can discern legislative intent from its plain language and context, further analysis is unwarranted. "We are not free to add words to statutory enactments in order to enlarge their scope beyond that which can be gleaned from a reading of the words

used by the legislature." *Metzinger v. Kentucky Retirement Systems*, 299 S.W.3d 541, 546 (Ky. 2009) (quoting *Rue v. Kentucky Retirement Systems*, 32 S.W.3d 87, 89 (Ky. App. 2000)).

The legislature specifically included vehicles used for air travel and navigation of waterways within the lien provision. However, if it had intended also to include industrial equipment that could be towed across public roadways, it could have incorporated additional language into the statute. It did not do so. The plain text of the statute sustains its application as written. An industrial baler is not a motor vehicle within the contemplation of the statute, and the trial court did not err in that conclusion.

We affirm the Order of the Pulaski Circuit Court.

ALL CONCUR.

BRIEF FOR APPELLANT:

Chase F. McWhorter
London, Kentucky

BRIEF FOR APPELLEE:

John T. Pruitt, Jr.
Somerset, Kentucky