RENDERED: FEBRUARY 21, 2025; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0796-WC

FORD MOTOR COMPANY                      APPELLANT


v.
PETITION FOR REVIEW OF A DECISION
OF THE WORKERS' COMPENSATION BOARD
ACTION NO. WC-13-00501


JOSEPH BADALL; HONORABLE
PETER J. NAAKE,
ADMINISTRATIVE LAW JUDGE;
AND WORKERS' COMPENSATION
BOARD OF KENTUCKY                      APPELLEES

AND

NO. 2024-CA-0932-WX

JOSEPH BADALL                      CROSS-APPELLANT


v.
CROSS-PETITION FOR REVIEW OF A DECISION
OF THE WORKERS' COMPENSATION BOARD
ACTION NO. WC-13-00501


FORD MOTOR COMPANY;
HONORABLE PETER J. NAAKE,
ADMINISTRATIVE LAW JUDGE;

## OPINION
## AFFIRMING

\*\* \*\* \*\* \*\* \*\*

BEFORE:  THOMPSON, CHIEF JUDGE; ACREE AND CALDWELL, JUDGES.

CALDWELL, JUDGE:  Ford Motor Company (Ford) petitions for review of an opinion of the Workers' Compensation Board (Board) affirming an Administrative Law Judge (ALJ) decision awarding Joseph Badall (Badall) enhanced permanent partial disability (PPD) benefits upon reopening.  Specifically, Ford challenges the application upon reopening of the two-multiplier in KRS[1] 342.730(1)(c)2. – which calls for the doubling of PPD benefits awarded to employees who returned to employment at the same or greater wages than before the injury "[d]uring any period of cessation of that employment, temporary or permanent, for any reason, with or without cause[.]"

Badall cross-petitions for review, challenging the ALJ's denial of temporary total disability (TTD) benefits for the nearly three-year period between the filing of Badall's motion to reopen and his undergoing a surgery, which was approved by an ALJ a few months after the filing of Badall's motion to reopen.

---

[1] Kentucky Revised Statutes.

We affirm.

## FACTS

In February 2014, an ALJ entered an Opinion, Order, and Award (initial ALJ decision). The ALJ found that due to Badall's work as a forklift operator for Ford, Badall had suffered a cumulative trauma injury to his back which manifested on January 7, 2013.

The ALJ found Badall was medically released to return to work with restrictions on or about March 28, 2013. The ALJ further found Badall had returned to work full-time at Ford in other positions since April 2013, earning the same wages as before his injury. The ALJ noted Badall stated he was not seeking application of the two- or three-multipliers in KRS 342.730 in his brief.

The ALJ awarded Badall TTD benefits from January 7, 2013, through March 28, 2013. The ALJ also awarded Badall PPD benefits with no statutory multipliers for 425 weeks with these benefits suspended during periods of TTD and subject to the limitations set forth in KRS 342.730(4) as of January 7, 2013. Lastly, the ALJ ordered that Badall shall recover from Ford benefits for medical care required for the cure and relief of his back injury.

Neither party filed a petition for review of the initial ALJ decision. Badall retired from Ford as of May 1, 2016.

In March 2018, Ford filed a motion to reopen to assert a medical fee dispute. Ford challenged Badall's request for back surgery recommended by Dr. John Harpring, alleging the surgery was not medically necessary and/or not related to the work injury of January 7, 2013. In early April 2018, the ALJ found Ford had made a *prima facie* showing for reopening. However, in late May 2018, the claim was returned to the Frankfort motion docket for consideration of a motion to reopen for worsening, as the ALJ found the dispute to be beyond the scope of its medical fee dispute docket.

In early June 2018, Badall filed a motion to reopen, checking a box on a form indicating the basis was a change of disability. (Ford points out the box for conforming an award to an employee's work status was not checked.) Badall stated in his motion to reopen:

> The Employer filed a medical fee dispute denying a request for a bilateral L4-5 discectomy by Dr. Harpring. The Claimant is requesting TTD during the period of recuperation and possibly additional PPD and/or PTD [permanent total disability] depending on the outcome of the surgery. This affiant feels that this warrants a reopening under KRS 342.125 for this issue in addition to the medical issues. In addition, Claimant is no longer working for the same or greater wages and therefore may be entitled to a modification of benefits pursuant to KRS 342.730(1)(c)(1) or (2).

In mid-June 2018, the chief ALJ entered an order passing Badall's motion to reopen for TTD, should he prevail on the request for surgery, pending a decision on the medical fee dispute.

In November 2018, ALJ Jane Rice-Williams entered an interlocutory opinion and order resolving the medical fee dispute in Badall's favor and finding the recommended back surgery to be medically reasonable, necessary, and work-related and thus compensable. The ALJ also ordered that TTD shall be paid beginning the date of surgery and that: "Following surgery and upon reaching MMI [maximum medical improvement], either party may make a motion to terminate TTD and place the claim on the active docket."

In April 2020, the ALJ ordered the parties to submit status reports. Shortly thereafter, Badall filed a status report by counsel noting Badall now lived in Florida and had difficulty scheduling appointments with Dr. Harpring in Kentucky, but Badall had seen Dr. Harpring as of early March 2020, just before the COVID-19 shutdown. A few months later, the case was assigned to ALJ Peter Naake.

The ALJ ordered that additional status reports be filed several months later. Badall filed additional status reports in December 2020 and January 2021 expressing concerns that COVID-19 restrictions might delay scheduling the surgery and stating that his blood sugar was high during pre-testing, so he was

prescribed medication to bring that down. The ALJ again ordered the parties to file status reports in the summer of 2021 and Badall then filed a status report indicating the surgery had been approved and he was awaiting scheduling.

Badall underwent the requested back surgery on August 11, 2021, and Ford began paying TTD as of that date. Ford filed a motion to terminate TTD as of December 26, 2021, when Badall reached the age of 70. *See* KRS 342.730(4), *as amended effective* Jul. 14, 2018. The ALJ granted this motion.

Next, Ford asserted another medical fee dispute. The case was referred to mediation which failed to resolve the parties' disputes. After the parties presented proof including medical reports, the ALJ issued an opinion, order, and award in December 2023 ("ALJ decision on reopening").

The ALJ awarded Badall enhanced PPD benefits (applying the two-multiplier) for the period from Badall's early May 2016 retirement until Badall's 70th birthday in late December 2021 with interruptions for periods of TTD. The ALJ also awarded Badall TTD benefits from the August 2021 date of surgery until Badall's 70th birthday in late December 2021. However, the ALJ denied Badall's request for TTD during the time frame between the date Badall's motion to reopen was filed (June 4, 2018) and the date surgery occurred (August 11, 2021).

After the ALJ denied the parties' petitions for reconsideration, both parties appealed to the Board. The Board affirmed the ALJ decision on reopening

in an opinion entered June 7, 2024 (Board opinion). Further facts will be provided as necessary in our analysis.

## ANALYSIS

### Standard of Review

When the Court of Appeals reviews a Workers' Compensation Board opinion resolving an appeal of an ALJ decision, this Court should not "correct the Board" unless "the Court perceives the Board has overlooked or misconstrued controlling statutes or precedent, or committed an error in assessing the evidence so flagrant as to cause gross injustice." *Western Baptist Hosp. v. Kelly*, 827 S.W.2d 685, 687-88 (Ky. 1992).

We first address Ford's challenge to the award of enhanced PPD benefits applying the two-multiplier in KRS 342.730(1)(c)2. upon reopening.

### Application of the Two-Multiplier in KRS 342.730(1)(c)2. Upon Reopening

KRS 342.730(1)(c)2. states:

> If an employee returns to work at a weekly wage equal to or greater than the average weekly wage at the time of injury, the weekly benefit for permanent partial disability shall be determined under paragraph (b) of this subsection for each week during which that employment is sustained. **During any period of cessation of that employment, temporary or permanent, for any reason, with or without cause, payment of weekly benefits for permanent partial disability during the period of cessation shall be two (2) times the amount otherwise payable under paragraph (b) of this**

**subsection**.  This provision shall not be construed so as to extend the duration of payments.

(Emphasis added.)

Moreover, KRS 342.730(1)(c)4. states:  "Notwithstanding the provisions of KRS 342.125, a claim may be reopened at any time during the period of permanent partial disability in order to conform the award payments with the requirements of subparagraph 2 of this paragraph."

In the decision on reopening, the ALJ ordered that Badall's PPD benefits be enhanced by the two-multiplier in KRS 342.730(1)(c)2. beginning on May 2, 2016, and continuing during the 425-week period which started January 7, 2013 "but interrupted and extended by all periods of temporary disability" and with income benefits ceasing when Badall reached age 70.

Ford contends the Board erred in affirming the ALJ's decision on reopening.  It contends application of the two-multiplier was barred by *res judicata*.  In the alternative, it argues the ALJ erred in retroactively ordering the enhancement prior to the date Badall filed his motion to reopen.  We first address the *res judicata* argument.

### No Reversible Error in Board's Affirming ALJ's Determination that Application of the Two-Multiplier in KRS 342.730(1)(c)2. Was Not Barred by *Res Judicata*

Ford notes the initial ALJ decision states Badall's brief indicated he was not seeking application of the two-multiplier and the ALJ declined to address

-8-

whether Badall could return to the type of work performed at the time of injury because Badall "has withdrawn the issue." Ford asserts Badall chose to waive any entitlement to enhanced PPD benefits before the initial ALJ decision and points out that PPD benefits with no statutory multiplier were awarded in the ALJ's initial, final decision. Ford also points out Badall did not appeal from the ALJ's initial decision.

Ford states Badall asserted entitlement to the two-multiplier in 2018, but contends he failed to list two-multiplier application as a contested issue or argue for this enhancement of PPD benefits during the interlocutory stage of proceedings. Ford also asserts Badall did not argue he was entitled to two-multiplier enhancement in 2016 (when Badall retired), but instead waited until after his benefits terminated entirely to argue entitlement to enhanced PPD benefits. Ford submits that Badall had an opportunity to assert entitlement to the two-multiplier earlier but withdrew the issue.

In sum, Ford contends the concepts of issue preclusion and claim preclusion apply. Therefore, Badall's claim for enhanced PPD benefits pursuant to KRS 342.730(1)(c)2. is barred by *res judicata* in Ford's estimation.

In response, Badall points out that his brief to the ALJ prior to the initial ALJ decision was based on the fact situation at that time – *i.e.*, the fact that he was working and was not making less money than before his injury. So, he

asserts entitlement to statutory multipliers was not an issue then. Badall contends application of a statutory multiplier did not become an issue until, after returning to employment at the same or greater wages, his employment ceased upon retirement.

As Badall points out, the Board agreed with the ALJ's rejection of Ford's *res judicata* arguments. The Board opinion concluded that by operation of law, "KRS 342.730(1)(c)2. clearly entitles an injured worker earning the same or greater wages to the enhanced PPD benefits **during any cessation of work during the applicable period of benefits**." (Emphasis in original.)

Moreover, the Board opinion agreed with the ALJ that application of the two-multiplier in KRS 342.730(1)(c)2. vested automatically upon Badall's retirement on May 1, 2016. Furthermore, the Board opinion noted this statute contains no language indicating this entitlement "expires, can be waived or is otherwise terminated <u>except</u> upon a return to work, entitlement to TTD benefits, or achieving the age of 70." (Emphasis in original.) Thus, based on the plain language of the statute, the Board concluded that since Badall never returned to work after his retirement and was not entitled to TTD benefits prior to the surgery, he was entitled to enhanced PPD benefits by operation of law from May 2, 2016, until the date of surgery (August 11, 2021).

Having carefully reviewed the record and applicable law, we discern no reason to correct the Board's conclusion that application of the two-multiplier

in KRS 342.730(1)(c)2. to enhance PPD benefits on reopening was not barred by *res judicata*. *See Kelly*, 827 S.W.2d at 687-88. There is no dispute that Badall ceased working during the 425-week period of PPD benefits commencing on January 7, 2013 when he retired on May 1, 2016 and then never returned to work. We do not perceive that the Board "committed an error in assessing the evidence so flagrant as to cause gross injustice." *See id*. at 688.

Not only do we perceive no flagrant error in assessing the evidence, but we also perceive no indication that the Board "overlooked or misconstrued controlling statutes or precedent" in affirming the ALJ's determination that *res judicata* did not bar enhancement of PPD benefits upon reopening. *See id*. at 687-88. Instead, the resolution of this issue by both the Board and the ALJ is entirely consistent with the plain language of KRS 342.730(1)(c)2. and 4. and with controlling precedent from our Supreme Court.

Recent precedent from our Supreme Court recognizes that when a workers' compensation statute "expressly provides for reopening under specified conditions," *res judicata* does not apply when such specified conditions are met.

-11-

*Lakshmi Narayan Hosp. Group Louisville v. Jimenez*, 653 S.W.3d 580, 587 (Ky. 2022) (quoting *Stambaugh v. Cedar Creek Mining Co.*, 488 S.W.2d 681, 682 (Ky. 1972)).[2]

Moreover, the plain language of KRS 342.730(1)(c)2. clearly provides that if claimants return to work at the same or greater wages than their average weekly wages at the time of injury, PPD benefits must be enhanced by the two-multiplier during any cessation of work "for any reason" during the period for which benefits are awarded. And KRS 342.730(1)(c)4. states: "Notwithstanding the provisions of KRS 342.125, a claim may be reopened **at any time** during the period of permanent partial disability in order to conform the award payments with the requirements of" KRS 342.730(1)(c)2. (Emphasis added.)

In sum, we discern no reversible error in the Board's rejection of Ford's argument that *res judicata* barred the application of the two-multiplier to enhance Badall's PPD benefits upon reopening.[3]

---

[2] As our Supreme Court recently made clear, workers' compensation proceedings are statutorily based administrative proceedings so *res judicata* applies differently than it would to judicial actions and "authority based upon judicial proceedings is not necessarily binding in the context of proceedings under Chapter 342." *Jimenez*, 653 S.W.3d at 587 (quoting *Whittaker v. Reeder*, 30 S.W.3d 138, 143 (Ky. 2000)). In other words, "Compensation cases may be reopened on grounds that would not be sufficient to authorize the disturbance of judgments in common law or equity proceedings." *Stambaugh*, 488 S.W.2d at 682.

[3] Within Ford's argument on *res judicata*, Ford also suggests that application of the two-multiplier in KRS 342.730(1)(c)2. on reopening should have been denied based on estoppel and/or laches. The Board implicitly rejected such arguments about estoppel and laches in this context, stating that entitlement to enhanced benefits under KRS 342.730(1)(c)2. for periods of cessation of employment during the disability period arises by operation of law and cannot be

-12-

Next, we address Ford's argument that the Board erred in affirming the ALJ's determination that enhancement of PPD benefits pursuant to KRS 342.730(1)(c)2. commenced upon Badall's retirement in May 2016 despite Badall's not filing his motion to reopen until June 2018.

**No Reversible Error in Board's Affirming ALJ's Commencement of Enhanced Benefits Pursuant to KRS 342.730(1)(c)2. Prior to the Filing of Badall's Motion to Reopen**

KRS 342.125(4) provides in pertinent part: "Reopening shall not affect the previous order or award as to any sums already paid thereunder, and any change in the amount of compensation shall be ordered only from the date of filing the motion to reopen." Ford contends the Board erred in affirming the ALJ's determination that application of the two-multiplier in KRS 342.730(1)(c)2. to enhance Badall's PPD's benefits commenced in May 2016 – prior to Badall's filing his motion to reopen in June 2018. Moreover, in its Petition for Review, Ford argues the Board erred in affirming the ALJ because the ALJ, in Ford's estimation, "misinterpreted and misapplied" an unpublished opinion from our Supreme Court "when determining the date of commencement."

_____

waived or expire. Moreover, Ford has not cited any precedent regarding estoppel or laches in the specific context of workers' compensation cases (especially reopening proceedings) in its petition for review to challenge the Board's implicit rejection of its arguments about estoppel and laches. So, we decline to discuss its undeveloped arguments about estoppel and laches further.

Specifically, Ford contends the ALJ misconstrued "the Kentucky Supreme Court's ruling in *Muthler v. Climate Control of Kentucky* . . . ."[4] Ford suggests the ALJ improperly used *Muthler* as authority to apply the two-multiplier beginning in May 2016, prior to Badall's filing a motion to reopen in June 2018. Ford contends *Muthler* does not apply here because the ALJ in *Muthler* awarded two-multiplier enhancement of PPD pursuant to KRS 342.730(1)(c)2. prior to the filing of the motion to reopen. More specifically, prior to the filing of the motion to reopen, the ALJ entered an amended award generally stating Muthler was entitled to two-multiplier enhancement for "any" periods of cessation of

---

[4] Oddly, Ford does not provide a full, proper citation for the unpublished Kentucky Supreme Court opinion it contends the ALJ misapplied in its petition for review. However, Ford appears to be referring to *Muthler v. Climate Control of Kentucky*, Nos. 2010-SC-000302-WC and 2010-SC-000334-WC, 2011 WL 1642447 (Ky. Apr. 21, 2011) (unpublished) ("*Muthler*").

Ford does provide a proper citation for the unpublished opinion by this Court, *Climate Control of Kentucky v. Muthler*, Nos. 2009-CA-001371-WC and 2009-CA-4761-WC, 2010 WL 1427326 (Ky. App. Apr. 9, 2010) ("*Climate Control*"), which was affirmed by the Supreme Court in *Muthler*, 2011 WL 1642447.

Unpublished opinions by the Kentucky Supreme Court and the Court of Appeals are not binding authority. Kentucky Rules of Appellate Procedure (RAP) 41(A). Nonetheless, such unpublished opinions from Kentucky appellate courts may be cited for consideration if other RAP 41(A) requirements are met, including the citing party's stating the unpublished opinion is not binding and there being a lack of published precedent from Kentucky appellate courts adequately addressing the legal issue argued by the citing party. *See* RAP 41(A)(3)-(4).

Ford stated an unpublished opinion is not binding authority in its petition for review. Moreover, there appears to be no published precedent from Kentucky appellate courts regarding the specific issue raised by Ford about the proper commencement date for enhancing benefits pursuant to KRS 342.730(1)(c)2. upon reopening. Thus, we discuss the unpublished opinions of Kentucky appellate courts in *Muthler* and *Climate Control* as persuasive authority in the absence of prior published precedent by Kentucky appellate courts on this issue.

employment during the disability period without ordering the application of the two-multiplier during any specified time frame.[5]

Badall disagrees with Ford's arguments on this issue, simply stating that the ALJ did not misunderstand *Muthler* and correctly relied upon it to retroactively enhance PPD benefits by the two-multiplier in KRS 342.730(1)(c)2. according to the clear language of the statute.

Certainly, *Muthler* is not factually or procedurally identical to this case. For example, the ALJ ordered that Muthler was entitled to the application of the two-multiplier in KRS 342.730(1)(c)2. for any periods of cessation of employment before the motion to reopen was filed and the basis of Muthler's motion to reopen was the employer's alleged refusal to provide enhanced benefits awarded by the ALJ.[6] In fact, the Board stated Muthler should have filed an enforcement action in circuit court rather than a motion to reopen before the ALJ.[7]

---

[5] *See Climate Control*, 2010 WL 1427326, at *2-3 (noting that prior to claimant's filing a motion to reopen in late 2005, the ALJ amended the original award to state: "[S]ince Plaintiff initially returned to work at an average weekly wage equal to or greater than $653.53, he is entitled to enhanced benefits pursuant to KRS 342.730(1)(c)(2) for any period of cessation of that employment, either temporary or permanent, for any reason, with or without cause. During any cessation of that employment, weekly benefits of $114.30 shall be doubled to $228.60.").

[6] *Climate Control*, 2010 WL 1427326, at *3.

[7] *Climate Control*, 2010 WL 1427326, at *4.

-15-

Nonetheless, the Board in *Muthler* addressed the issue of whether, upon reopening, enhanced benefits pursuant to KRS 342.730(1)(c)2. could commence prior to the filing of the motion to reopen. It concluded such enhanced benefits could commence prior to the filing of the motion to reopen despite any apparent conflict with KRS 342.125(4).[8] Noting the employer's argument that such enhanced benefits should not commence prior to the filing of the motion to reopen pursuant to KRS 342.125(4), our Supreme Court nonetheless agreed with the Board and stated:

> Although KRS 342.125(4) requires "any change in the amount of compensation" to be ordered "only from the date of filing the motion to reopen," KRS 342.730(l)(c)2. states unequivocally that weekly benefits for partial disability "shall be" twice the amount otherwise payable "[d]uring any period of cessation" of employment at the same or a greater wage. Mindful that KRS 342.730(l)(c)2. is a more specific provision that applies only to a discrete class of awards entered at reopening, we conclude that the legislature intended by its unequivocal language to exempt from the limitation imposed by KRS 342.125(4) those awards entered for the purpose of conforming the payments ordered previously with the requirements of subparagraph 2. of KRS 342.730(l)(c). In other words KRS 342.125(4) does not govern the date for commencing such an award. KRS 342.730(1)(c) 2. generally requires the award to commence with the cessation of employment at the same or a greater wage.

---

[8] *Muthler*, 2011 WL 1642447, at *3.

(Footnote omitted.)[9]

Especially given the lack of published precedent on point, we cannot fault the ALJ or the Board for following our Supreme Court's unpublished opinion in *Muthler*. While *Muthler* may be different from this case in certain respects,[10] our Supreme Court nonetheless made clear therein that KRS 342.125(4) does not control when enhanced benefits pursuant to KRS 342.730(1)(c)2. commence upon reopening. Instead, our Supreme Court found the plain language of the more specific statute (KRS 342.730(1)(c)2.) controlling. So, we do not perceive that the Board overlooked or misconstrued controlling statutes and precedent in affirming the ALJ's awarding enhanced benefits commencing when Badall ceased working in May 2016, prior to the filing of his motion to reopen. And so, we discern no

---

[9] *Muthler*, 2011 WL 1642447 at *5.

[10] For example, *Muthler* presented issues about whether enhanced benefits pursuant to KRS 342.730(1)(c)2. could commence prior to the amended award entered by the ALJ in 2004 which preceded the filing of the motion to reopen in 2005. *See Muthler*, 2011 WL 1642447, at *5. ("The Court of Appeals did not err when concluding that double benefits could not be ordered in this case before May 19, 2004. ALJ Terry's amended award of May 19, 2004 ordered the employer to pay a basic income benefit from the date that the period of permanent partial disability commenced and ordered the claimant to produce income tax returns for 2002 and 2003 within 10 days. He failed to do so or to appeal the decision. As a consequence the basic benefit became final with respect to the claimant's entitlement for the period before May 19, 2004."). Moreover, the amended award entered prior to the motion to reopen in *Muthler* expressly called for the enhancement of PPD benefits during any periods of cessation of employment pursuant to KRS 342.730(1)(c)2. *See Muthler*, 2011 WL 1642447, at *2 ("The order amended the claimant's award to provide for a basic income benefit of $114.30 for 425 weeks from October 12, 2001 that was subject to being doubled for any period of cessation of that employment."). (Internal quotation marks omitted.) *See also Climate Control*, 2010 WL 1427326, at *2-3, which we previously quoted in footnote 5 of this Opinion.

-17-

reversible error in the Board's resolution of this issue pursuant to the standard established in *Kelly*, 827 S.W.2d at 687-88.

Next, we consider Badall's cross-petition for review of the denial of TTD Benefits for the period between the June 2018 filing of his motion to reopen and his back surgery on August 11, 2021.

### Denial of TTD Benefits from Date of Filing Motion to Reopen (June 4, 2018) Until Date of Surgery (August 11, 2021) Properly Affirmed by Board

Badall claims the ALJ erred in denying him TTD benefits during the period between his filing his motion to reopen in June 2018 and his undergoing the requested surgery in August 2021. He argues he was entitled to TTD from the date he filed his motion to reopen (June 4, 2018) until he reached the age of 70 in late December 2021 – based on his assertions that he was unable to return to the employment he had at the time of his injury and was not at maximum medical improvement (MMI) when he filed his motion to reopen.

KRS 342.0011(11)(a) defines *temporary total disability* as meaning "the condition of an employee who has not reached maximum medical improvement from an injury and has not reached a level of improvement that would permit a return to employment[.]" *See also Magellan Behavioral Health v. Helms*, 140 S.W.3d 579, 581 (Ky. App. 2004) ("In order to be entitled to temporary total disability benefits, the claimant must not have reached maximum

medical improvement **and** not have improved enough to return to work.").
(Emphasis in original.)

The ALJ noted that despite the parties' apparent focus on whether Badall was able to return to his customary work at Ford during the contested period, Badall's entitlement to TTD for this contested period depended on him not being at MMI then. The ALJ found Badall was at MMI and so was ineligible for TTD benefits during this contested period, explaining his reasoning in detail.

The ALJ decision on reopening quoted the definition of *maximal* [*sic*] *medical improvement* in the American Medical Association's *Guides to the Evaluation of Permanent Impairment* (5th ed.): "condition or state that is well stabilized and unlikely to change substantially in the next year, with or without medical treatment. Over time, there may be some change; however, further recovery or deterioration is not anticipated."

Next, the ALJ stated: "When a patient is anticipating having a surgery in the near future, he can be considered not to be at MMI because his medical condition is expected to change with the surgery." The ALJ further explained that in workers' compensation cases, the decision to have surgery entailed three parts: 1) a physician's proposing or recommending the surgery, 2) the claimant's consenting to the surgery after consultation with the surgeon, and 3) the payment obligor's agreeing to pay for the surgery or being ordered to do so.

Based on the November 2018 interlocutory order approving the surgery as compensable, the ALJ found that the first and third parts of the decision for surgery were fulfilled at that time, but that Badall did not decide to pursue surgery until 2021. So, the ALJ determined Badall was at MMI for the period between his filing his motion to reopen in June 2018 and his deciding to have surgery in August 2021 and therefore was not entitled to TTD for that contested period, explaining:

> [Badall's] decision not to pursue surgery meant that his medical condition was not likely to change in the next year until he had taken steps to proceed with the surgery. In fact Badall's condition did not change and remained stable for two years and nine months after ALJ Rice-Williams' interlocutory decision, until he underwent surgery on August 11, 2021. Badall did not testify as to the date he finally decided to proceed with the surgery or the reasons he delayed for two years and nine months before undergoing the surgery after it was approved, and no other evidence of record explains this delay. [11]

> Therefore, Badall met the definition of having reached maximum medical improvement, and was not entitled to temporary total disability benefits, until the time he decided to have surgery and contacted Dr. Harpring to schedule it. At that time his condition would have been expected to change within the next year. The date Badall decided to have surgery and contacted Dr. Harpring was not proven by evidence of record.

---

[11] Perhaps some might view the status reports filed in the record in 2020 and 2021 as offering some explanations for delay (including COVID-19 restrictions and health conditions), but neither party discussed these status reports in their arguments about TTD. Moreover, such status reports appear more akin to pleadings than evidence and Badall has not cited any evidence (such as testimony or documentary evidence) explaining the delay in his undergoing surgery in his cross-petition for review.

-20-

The ALJ also stated he found persuasive Dr. Loeb's opinion testimony that Badall was at MMI in July 2018.[12]

Badall contends the Board erred in affirming the ALJ's denying him TTD benefits for the period between his filing the motion to reopen in June 2018 and his undergoing surgery in August 2021. He suggests that the November 2018 interlocutory order contains a clear finding he was not at MMI at that time since the ALJ ordered TTD paid until he reached MMI. However, this interlocutory order clearly provided only that TTD be paid from the date of surgery until Badall reached MMI thereafter – thus it did not clearly indicate he was not at MMI before the surgery.

Moreover, even a statement in Badall's cross-petition suggests it is proper to consider a claimant to be at MMI when the claimant does not undergo a recommended surgery:

> The Administrative Law Judges routinely award benefits
> from the date of surgery, kind of a condition precedent,
> so they are not put in a position where TTD has been

---

[12] In his order denying the parties' respective petitions for reconsideration, the ALJ further explained that he found Badall to be at MMI during the contested period from June 2018 until the August 2021 surgery based on Badall's being at MMI at the time of the initial ALJ decision, Dr. Loeb's opinion that Badall was at MMI in 2018, and a lack of change in Badall's condition until the August 2021 surgery. The ALJ stated: "The mere fact that Badall had been advised to undergo surgery did not change his condition. The definition of maximum medical improvement is a condition or state that is well stabilized and unlikely to change substantially in the next year, with or without medical treatment. Because Badall did not act upon the advice to have surgery until two years and nine months later, he did not anticipate a substantial change in his condition until the time he underwent the lumbar fusion, which was well over a year after he claimed to be anticipating a change in his condituion [sic]." (Page 2 of Order Denying Reconsideration.)

> ordered and the surgery does <u>not</u> take place because the Claimant, as here, <u>would be at MMI if the surgery did not take place, but here it did</u>.

Though Badall ultimately did undergo surgery, he did not do so for nearly three years after an ALJ approved the surgery and the ALJ found Badall offered no evidence explaining such delay in pursuing the surgery or indicating any change in his condition during this period.

Although the unexplained delay played a key part in the ALJ's decision on TTD, the parties do not discuss in depth the ALJ's findings about how the unexplained delay in Badall's undergoing surgery affected whether he was at MMI or entitled to TTD benefits in their briefs to this Court.

In his statement of the case, Badall suggests the ALJ erred in finding Badall to be at MMI prior to the November 2018 interlocutory order based on Ford's argument that an extended period of TTD "based upon a unilateral delay" would be improper. Badall contends such a unilateral delay "has absolutely no bearing on the factual and legal issues here." However, Badall cites no authority for this contention and does not discuss this contention any further in the argument section of his cross-petition. *See Hadley v. Citizen Deposit Bank*, 186 S.W.3d 754, 759 (Ky. App. 2005) ("Our courts have established that an alleged error may be deemed waived where an appellant fails to cite any authority in support of the issues and arguments advanced on appeal. . . . It is not our function as an appellate

-22-

court to research and construct a party's legal arguments, and we decline to do so here."). (Citations omitted.)

In his argument about TTD, Badall asserts he was not at MMI from June 4, 2018 through August 11, 2021 based on Dr. Nazar's testimony that Badall would likely not reach MMI until about a year after the surgery. However, the ALJ acknowledged Dr. Nazar opined Badall was not at MMI when the surgery was performed or during the preceding months when issues about whether surgery was medically necessary or appropriate were being litigated. Yet, the ALJ did not indicate he found Dr. Nazar's opinion on this matter persuasive. Instead, the ALJ found Dr. Loeb's opinion to the contrary persuasive.

Moreover, the ALJ found Badall had not presented substantial evidence to support altering the terms of the November 2018 interlocutory decision which awarded TTD benefits beginning on the date of surgery. So, in the decision on re-opening, the ALJ declined to "arbitrarily change that award without substantial evidence of a different date that Badall was temporarily totally disabled." Instead, consistent with the November 2018 interlocutory order, the ALJ concluded Badall was entitled to TTD from August 11, 2021 (the date of surgery) until December 26, 2021 (the date Badall reached age 70).

On appeal, the Board noted that Badall provided no explanation for the nearly three-year delay between the November 2018 interlocutory order and

Badall's undergoing the surgery in August 2021 and offered no evidence about this issue. The Board affirmed the ALJ's denial of TTD for the contested period, stating the ALJ had "thoroughly reviewed the supplemental medical evidence, performed the proper analysis, and clearly provided the basis for his determination to rely on Dr. Loeb's opinion that Badall had reached MMI in 2018 and that his condition did not change prior to the surgery date." The Board also concluded the ALJ's decision to deny TTD for the time between Badall's filing his motion to reopen in June 2018 and his undergoing surgery in August 2021 was supported by substantial evidence and that the evidence did not compel a contrary result.

Ford points out in its response to the cross-petition for review that Badall did not dispute that Dr. Loeb's testimony was substantial evidence supporting the ALJ's decision to deny TTD from June 2018 until the date of surgery. It also asserts that Badall failed to cite any law which the ALJ ignored or misapplied in denying Badall TTD for the time at issue.

Despite the parties' apparent focus on whether the ALJ erred, our focus is on whether the Board flagrantly erred in its assessment of the evidence, resulting in gross injustice, or overlooked or misconstrued controlling statutes and precedent in affirming the ALJ's denial of TTD during the contested period. *See Kelly*, 827 S.W.2d at 687-88.

Having reviewed the record and applicable law, we discern no reversible error in the Board's affirming the ALJ on this issue. Badall did not challenge in his cross-petition the ALJ's finding, affirmed by the Board, that he offered no evidence explaining the nearly-three-year delay between the November 2018 interlocutory order approving the surgery and his undergoing the surgery in August 2021. Nor did he cite to any evidence of record explaining the delay in his undergoing surgery or cite any authority to support his contention that such delay has no bearing on determining whether he was at MMI or entitled to TTD during the contested period.

Moreover, his pointing to Dr. Nazar's opinion that Badall was not at MMI in 2018, prior to undergoing surgery in 2021, does not show that the Board erred in affirming the ALJ's finding to the contrary. Perhaps a different factfinder might have found Dr. Nazar's opinion that Badall was not at MMI more persuasive than Dr. Loeb's testimony (which the ALJ relied upon) that Badall was at MMI in the summer of 2018. Nonetheless, when the medical evidence is conflicting, the ALJ has the sole prerogative to determine which medical evidence to believe. *Greene v. Paschall Truck Lines*, 239 S.W.3d 94, 109 (Ky. App. 2007). The Board properly declined to second-guess the ALJ's assessment of the weight and credibility of the conflicting medical evidence. The Board also properly affirmed the ALJ's finding that Badall was at MMI during the period between his filing his

motion to reopen in June 2018 and his undergoing surgery in August 2021 as supported by substantial evidence including Dr. Loeb's opinion testimony.

In sum, we discern no reversible error in the Board's affirming the ALJ's denial of TTD benefits from June 4, 2018, until August 11, 2021.

Further arguments raised by the parties which are not discussed herein have been determined to lack merit or relevancy to our resolving the parties' cross-petitions for review. For example, it is not necessary for us to address the alternative arguments raised in Ford's response to the cross-petition for affirming the denial of TTD benefits for the contested period since the Board properly affirmed the ALJ on the TTD issue based on the ALJ's properly supported findings about MMI.

## CONCLUSION

For the foregoing reasons, we AFFIRM the Board.


ALL CONCUR.


BRIEFS FOR APPELLANT/CROSS-APPELLEE:

Brian W. Davidson
Joshua W. Davis
Louisville, Kentucky

BRIEF FOR APPELLEE/CROSS-APPELLANT:

Wayne C. Daub
Louisville, Kentucky